## Levy et al. v. Long et al.

(Decided Feb. 11, 1938.)

ROBERT L. PAGE for appellants.

J. E. HUTCHINS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—Affirming.

This is an appeal from a judgment of the Jefferson circuit court confirming an award of the Workmen's Compensation Board made to the appellee

# 50

Samuel V. Long.  There is no dispute in regard to the serious character of appellee's injuries, and the sole question presented is whether he was an employee of appellants or their subcontractor at the time he was injured, or whether he was at that time employed by an independent contractor.  Appellants are engaged in the business of selling building supplies, and are also building contractors.  Appellee is a carpenter by trade. In May, 1936, he was out of employment and was at his home in Louisville, when he was approached by a Mr. Lehman, whom he knew and who was a salesman and sort of supervisor for the appellants.  Appellee thus describes the conversation with Mr. Lehman:

> "He came by and asked me if I was ready to go to work; I told him yes.  He said, 'How soon can you get out to this job?' that they were putting up out on the River Road.  I said, 'I can get out there by noon.'  He said 'You go out there and tell a fellow by the name of Cheek that I told him to put you to work.'"

Appellee says that he went out to the place directed, and, when asked what conversation he had with Mr. Cheek, said:

> "Why, I went out there and inquired for Mr. Cheek, and he came down from off on top of the house, and I said, 'Mr. Cheek, George Lehman told me to come out here and tell you to put me to work.'  Mr. Cheek said, 'All right, get your tools and go ahead,' so I got my tools and went up on top of the house, but before I went to work Mr. Cheek said, 'Sign this book.'  I said, 'What is it?'  He said it was Jacob Levy & Bros. compensation book, and I signed it."

Appellee says he went to work immediately, and that after he had worked for three or four days Mr. Cheek left the job and moved on to another one, leaving appellee in charge of the completion of the work.  He says that Mr. Lehman and Mr. Sam Levy came out to the house he was working on, and that Mr. Lehman told him what to do whenever there was a change to be made or any extra work to be done.  When he needed materials he went to the Levy Bros. place of business to secure them.  After completing the first job appellee

moved on to another project at Harrods Creek, where he again worked under the direction of Mr. Cheek. It was while working at Harrods Creek that he fell from the building on which he was working and was injured. Appellee signed a statement while in the hospital, in which he stated that he was employed by Mr. Cheek and was paid his salary by him. He had been working for Mr. Cheek about two months and had signed the compensation book which Mr. Cheek handed him when he first started to work.

Mr. Cheek substantially confirmed appellee's testimony. He was asked what understanding he had with appellee as to whom he was working for, and replied:

"I just hired him and put him to work, that was all the understanding there was to it, and he went to work under me."

Asked, on cross-examination, if the only control Levy Bros. had over him was to see that the work was done according to specifications, he said:

"If it wasn't done according to specifications, they would have stopped me on the job."

It was shown by appellants that they entered into a contract with Mr. Cheek for each job that he was called on to perform, and that he had agreed to furnish all excavating, concrete, carpenter, brick, and tin labor necessary under the contract for the building at Harrods Creek for the sum of $575. It was likewise shown that appellants required Cheek to have the compensation book signed by every one employed, simply for their own protection and not with the idea that they were thereby making Cheek's employees their own. Mr. Lehman testified that he had no right to hire or discharge appellee.

The Compensation Board found that appellee was a servant of appellants, basing its conclusion largely on the ground that when Long was required to sign the compensation register this constituted an affirmative recognition that the relationship of master and servant existed. The signing of the compensation register was evidence of appellee's employment either by Jacob Levy and Brothers or their subcontractor. It certainly was not conclusive of this question, as found by the Com-

pensation Board. Diamond Block Coal Company v. Sparks, 209 Ky. 73, 272 S. W. 31; Raponi v. Consolidation Coal Company, 224 Ky. 167, 5 S. W. (2d) 1043.

While finding that appellee sustained the relationship of servant to the appellants, the board also found that he suffered his injuries ''while in the employ of Fred Cheek, and Fred Cheek was employed by Jacob Levy and Brothers.''

Conceding that the board gave undue weight to the admitted fact that appellee had signed the compensation register, the evidence nevertheless points inevitably, we think, to the conclusion that Cheek was not an independent contractor. The most that can be said of it is that Cheek may have been a subcontractor working on premises under the control or management of the principal contractors within the meaning of section 4891 of the Kentucky Statutes. The case is very like that of Burt v. Clay, 207 Ky. 278, 269 S. W. 322. Appellant here not only furnished the materials with which the work was constructed, but it likewise retained control of what was done, and how it was done. Wright v. Wilkins, 222 Ky. 144, 300 S. W. 342.

The conclusion of the board that appellee is entitled to compensation does not rest alone on the erroneous consideration of the weight to be given to the compensation register. On the contrary, the findings of fact bring the case directly within the purview of section 4891 as applied in Burt v. Clay, supra. We would not, therefore, be justified in disturbing the award merely because other findings may have been improper.

Judgment affirmed.