KATE FRANK, (Plaintiff) Appellant, v. SINCLAIR REFINING COMPANY, a Corporation, J. RUSSELL OGLE, d/b/a RUSSELL OGLE AGENCY, and GLENN SHOEMAKER, (Defendants) Respondents.

SYLVIA FEILICH, (Plaintiff) Appellant, v. SINCLAIR REFINING COMPANY, a Corporation, J. RUSSELL OGLE, d/b/a RUSSELL OGLE AGENCY, and GLENN SHOEMAKER, (Defendants) Respondents.

RUBIN H. FRANK, (Plaintiff) Appellant, v. SINCLAIR REFINING COMPANY, a Corporation, J. RUSSELL OGLE, d/b/a RUSSELL OGLE AGENCY, and GLENN SHOEMAKER, (Defendants) Respondents.

ROBERT FEILICH, (Plaintiff) Appellant, v. SINCLAIR REFINING COMPANY, a Corporation, J. RUSSELL OGLE, d/b/a J. RUSSELL OGLE AGENCY, and GLENN SHOEMAKER, (Defendants) Respondents. Nos. 43244, 43245, 43246 and 43247—256 S. W. (2d) 793.

Division Two, April 13, 1953.

*Burnett, Stern & Libermann, Henry H. Stern* and *Rexford H. Caruthers* for appellants.

*Moser, Marsalek, Carpenter, Cleary & Carter* and *Julian C. Jaeckel* for respondent Sinclair Refining Company, *Evans & Dixon* and *John F. Evans* for respondents J. Russell Ogle and Glenn Shoemaker.

1058

BARRETT, C.—The four actions consolidated upon this appeal are for damages for personal injuries resulting from a collision between an automobile and a truck. The plaintiffs were riding in the automobile. The collision occurred on U. S. Highway 54, near Louisiana, in Pike County, on September 5, 1951. The truck was a two-ton Ford upon which was mounted a 650 gallon gasoline tank. The truck was owned by J. Russell Ogle, who operates a Sinclair gasoline bulk plant in Louisiana, and was driven by Glenn Shoemaker. Sinclair Refining Company is authorized to transact business in Missouri and has an office and place of business in the City of St. Louis. The suits were instituted in the City of St. Louis and service of process was had upon the Sinclair Refining Company by the service of summonses upon the company in St. Louis. The individual defendants, Ogle and Shoemaker, were served with process in Pike County. The plaintiffs' petitions allege that Ogle ''is and was in the employ of defendant Sinclair Refining Company in the distribution and transportation of the latter company's petroleum products,'' and that Ogle employed Shoemaker as a driver of one of the vehicles used to transport Sinclair's petroleum products.

The individual defendants, Ogle and Shoemaker, filed joint motions to quash the summonses and returns and to dismiss the [795] actions. The Sinclair Refining Company filed a separate motion to *dismiss*. In their joint motions the individual defendants set forth that they were residents of Pike County where the alleged causes of action accrued, and that they were joined with Sinclair Refining Company. As to that company the individuals allege ''that no claim or cause of action for and on account of the damages alleged in plaintiff's petition can or does exist against Sinclair Refining Company, and said defendant is not and cannot be legally liable on the claim and cause of action alleged in plaintiff's petition, and is not a proper or necessary party in this action.'' The individual defendants then allege that the suits were instituted in the City of St. Louis against Sinclair Refining Company for the ''sole false and fraudulent purpose'' of lodging venue in St. Louis rather than in Pike County. Therefore, it was alleged, the Circuit Court of the City of St. Louis did not acquire jurisdiction of the persons of the individual defendants. Sinclair Refining Company set forth as grounds for dismissing the actions that the petitions did not state claims against it upon which relief could be granted, that Sinclair did not own or have any interest in the truck involved in the collision, that Ogle and Shoemaker were not employees of Sinclair, and that Sinclair was not a proper party to the actions and was not joined in good faith, but solely for the purpose of fixing venue of the actions in St. Louis against Ogle and Shoemaker who were not residents of St. Louis. There were no affidavits in support of Sinclair's motion to dismiss but Ogle's and Shoemaker's motions were supported by their affidavits which, in

substance, stated facts indicating that neither of them were employees of Sinclair. Upon the hearing of the motions Sinclair offered in evidence, in addition to the affidavits, a copy of its contract with Ogle and the certificate of title to the truck involved in the collision. The plaintiffs offered in evidence the depositions of Ogle and Shoemaker and certain documentary evidence which they contend establishes that Ogle was Sinclair's employee and not an independent contractor. At the conclusion of the hearing upon the motions the trial court sustained the individuals' motions to quash and Sinclair's motions to dismiss. Thereafter the plaintiffs filed motions to set aside the orders and those motions were overruled and judgments of dismissal entered. The plaintiffs have appealed from the judgments of dismissal.

■ At the outset we are confronted with Sinclair's motion to dismiss the appeals for the reason that the orders of dismissal are not final judgments or appealable orders in that they "deal only with the question of venue." It is urged that the dismissals were entered upon the oral motions of the plaintiffs and were voluntarily made by the plaintiffs, and for that reason are not appealable. In this connection it is urged that a dismissal for improper venue is, by the terms of the statute (V.A.M.S., Sec. 510.150), without prejudice and that the orders did not finally adjudicate the claims of the plaintiffs against the defendants.

If it were the fact, as Sinclair asserts, that these orders deal only with venue the respondents' position would be well taken because an order quashing the service for lack of venue is not a final appealable order or judgment. Evans v. Barham, (Mo.) 184 S. W. (2) 424; Tobin Asphalt Products, Inc., v. Henwood, (Mo. App.) 199 S. W. (2) 415; V.A.M.S., Sec. 512.020. Except for the claim of fraudulent joinder, it is of necessity conceded that, under the allegations of the petition, Sinclair is authorized to transact business in Missouri and has an office in St. Louis, (the petition alleges that Sinclair Refining Company is a Missouri corporation), and therefore venue of the action is appropriately in St. Louis. V.A.M.S., Sec. 508.010; State ex rel. O'Keefe v. Brown, 361 Mo. 618, 621, 235 S. W. (2) 304, 306. But it is only the motions of the individual defendants that raise the question of venue and those motions also raise the question of Sinclair's fraudulent joinder, and it is urged for that reason that process should be quashed. But Sinclair did not file motions to quash the process, its only motions were to *dismiss,* and one of the grounds for dismissal was that the petitions did not state claims against the defendants upon which relief could be granted. [796] And, the dismissal of a petition for failure to state a claim upon which relief could be granted is of course a final appealable order. Jones v. Williams, 357 Mo. 531, 209 S. W. (2) 907. But the respondents do not claim that the petitions upon their face fail to state causes of action, their claim is that the plaintiffs in fact do not have and could not have a cause of action

1060

against the defendant Sinclair Refining Company and, therefore, the joinder of that company was solely for the purpose of establishing venue in the City of St. Louis and was fraudulent. Willey v. Fyrogas Co., 363 Mo. 406, 251 S. W. (2) 635. It is only in this manner and in this respect that Sinclair could or does challenge jurisdiction of the persons and venue. And it is only for this reason that the individual defendants could complain of the venue and that the trial court could have sustained their individual motions to quash the service. So in effect, at least as far as Sinclair is concerned, the trial court disposed of the plaintiffs' causes of action upon their merits. It is assumed that the respondents could and did properly present and raise the question of fraudulent joinder (State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S. W. (2) 487; Diehr v. Carey, 238 Mo. App. 889, 191 S. W. (2) 296), but we are immediately concerned with whether the orders are final appealable judgments and not with the merits of the appeals. If the joinder of Sinclair was not pretensive and fraudulent the venue of the actions was appropriately in St. Louis and the trial court was in error in dismissing the actions as to the individual defendants. After the trial court sustained the defendants' motions, the plaintiffs filed motions to set aside the orders and those motions were also overruled. It was not until that point in the case that judgments of dismissal were in fact entered, prior to that time the transcript merely recited that the motions were sustained. And even though the judgments of dismissal recite that "Thereupon comes plaintiff, by attorney, and upon oral motion" the actions are dismissed, that fact does not make the orders "voluntary acts of these plaintiffs" so that the judgments are therefore dismissals without prejudice and not appealable for that reason. The judgments of dismissal are final for the purposes of these appeals and the motion to dismiss is overruled. State ex rel. Thompson v. Terte, supra; Willey v. Fyrogas Company, supra.

In this connection as well as with respect to the merits of the appeals it should be noted that this is the first instance of an appeal in which the proceedings or actions were terminated upon motion, affidavits and hearing under Section 509.290 of the Civil Code. When the Civil Code of Procedure was adopted the provision relating to summary judgments was rejected. 1 Carr, Civil Procedure, Sec. 7(e), p. 14; 9 Mo. L. R. 47, 63. However, in State ex rel. Thompson v. Terte, 357 Mo., l.c. 240, 207 S. W. (2), l.c. 491-492, the court en banc, as to a claim of fraudulent joinder for the purpose of establishing venue, said, "If so, plaintiff has stated a cause of action which has no existence in point of fact and evidence is required to show such fraudulent joinder. Diehr v. Carey, supra. *The trial court has jurisdiction to determine this issue.* Section 61 (V.A.M.S., Sec. 509.290) of the new Code permits lack of jurisdiction over the person to be

raised by motion whether or not the same may appear from the pleadings and other papers filed in the cause. Sec. 847.61 Mo. R. S. A., Carr, sec. 190. *Under the new practice evidence may be heard in the trial court before trial and the point determined."* But that case was an original proceeding to prohibit a circuit judge from assuming jurisdiction. In Diehr v. Carey, supra, there was a trial upon the merits, the trial court had overruled a plea in abatement, and the cause of action was disposed of upon appeal. There the court said, 238 Mo. App., l.c. 899, 191 S. W. (2), l.c. 301, "but if from the existing state of the law and the facts it is clear that the resident defendant can be liable to the plaintiff on no reasonable legal ground, and that plaintiff knew or must be presumed to have known such to be the case, then the joinder as a co-defendant of such person cannot be justified, and is explainable only as having been pretensively made to bring into the jurisdiction one who could not otherwise **[797]** have been subjected to the court's jurisdiction." The court of appeals found, from the facts and the existing law, that the plaintiff did not and could not have a cause of action against the resident defendant and held, therefore, that the trial court erred in overruling the plea in abatement. In Willey v. Fyrogas Company, supra, the motions to quash were overruled and the question of venue and fraudulent joinder was presented upon appeal. In State ex rel. Thompson v. Terte the court did not point out just what issues the trial court could finally dispose of in this manner, or what relief could or would be granted in the event of such final disposition. In this case the trial court simply sustained the motions and dismissed the actions and in doing so the trial court determined the issue of venue and fraudulent joinder, but in the process the court of necessity found and held as a matter of law that Ogle was an independent contractor and not in the employ of Sinclair Refining Company and as to that finding and the company there can be no doubt of the finality of the judgment. This is not to write summary judgments into the code but it is to say that if the parties pursue the course adopted here and the trial court in the process of determining venue finally terminates the action, the judgment and the issues involved in the trial court's determination are reviewable.

Upon this appeal the meritorious question, in fact the only question, is whether it may be declared as a matter of law, as the trial court did, that Ogle was an independent contractor and not an employee of Sinclair Refining Company, and therefore there could be no liability upon Sinclair for the negligence of Ogle and the truck driver Shoemaker. In short, the question is whether, in the circumstances of this record, the status of a bulk plant wholesale distributor of petroleum products is that of an independent contractor or whether he is an agent or employee of the company he represents. Annotation 116 A. L. R. 457. We are not concerned here with retailers or filling

station operators and their contracts. Coffman v. Shell Petroleum Corp., 228 Mo. App. 727, 71 S. W. (2) 97. The respondents rely upon certain federal cases arising under the Social Security Act and the Selective Service and Training Act in which it has been held that bulk plant distributors are independent contractors and not agents or employees. Texas Company v. Higgins, 118 F. (2) 636; American Oil Co. v. Fly, 135 F. (2) 491; Glenn v. Standard Oil Co., 148 F. (2) 51; Hudspeth v. Esso Standard Oil Co., 170 F. (2) 418. But, in the interpretation of those acts various tests were applied, the "economic reality" test was evolved (Bartels v. Birmingham, 332 U. S. 126, 67 S. Ct. 1547, 91 L. ed. 1947; United States v. Silk, 331 U. S. 704, 67 S. Ct. 1463, 91 L. ed. 1757) and finally the Social Security Act was amended in 1948 and it was expressly declared that "the usual common law rules" should apply. 26 U.S.C.A., Sec. 1607 (1); Crossett Lumber Co. v. U. S., 79 F. Supp. 20. It is possible that the social legislation cases stand apart (41 Col. L. R. 1015), in some of them the emphasis was upon the *control of details* rather than upon the right to control, and in some of the cases there were no other facts and circumstances before the court except the contract between the bulk plant operator and the company. It must be admitted, however, that these differences may not be sufficient to distinguish the cases, even so competent a craftsman as Judge Learned Hand was unable to satisfactorily reconcile the cases. Texas Co. v. Higgins, supra. There are minor differences in the contracts as to nomenclature and terms but in their essentials they are substantially similar and indistinguishable upon principle.

The contract involved here is entitled "Bailment Agreement" and Sinclair says that in legal effect it is "a factor's arrangement, and a factor is not an employee but an independent contractor." But descriptive nomenclature in the contract is not determinative of the relationship, every case depends upon the facts and circumstances and the actual practice, when the practice is available, and "the essential question to be determined is not whether the former (employer) actually [798] exercised control over the details of the work, but whether he had a right to exercise that control." Annotation 116 A. L. R., l.c. 459, 462; Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 569, 108 S. W. (2) 58, 61. And the appellants contend that the contract and the actual business practice between Sinclair and Ogle gave Sinclair control and the right to control, thereby rendering Ogle an employee and not an independent contractor.

It would serve no useful purpose to set forth the terms of the written agreement, substantially similar contracts are set forth in many of the cited cases. In many respects the contract indicates that the status of Ogle is that of an independent contractor and in many respects the contract indicates that his status is that of an

employee. Sinclair points to the contract provisions indicating lack of control, Ogle's freedom to follow his own devices in the sale of petroleum products, the liabilities he specifically assumed under the contract and to the fact that Ogle owned the truck involved in the collision, hired Shoemaker, pays his own license fees and to many other factors indicative of independent contractor and urges that all these factors conclusively establish the relationship. It urges that its right to reject Ogle's orders, that it furnished certain literature, sales advice and supervision are not inconsistent with the status of independent contractor. And, as indicated, there are a number of factors indicative of independent contractor, but they do not comprise all the factors. Whatever the agreement may be called, it contained many reservations and restrictions upon Ogle's conduct of the business. He sold no products other than Sinclair's, and that in a limited territory at prices specified by Sinclair. The contract was not assignable and it was terminable by either party at any time, with or without cause. Ogle was required to make daily deposits of all collections in a bank designated by Sinclair and to make daily reports accompanied by deposit slips. He was paid solely on a commission basis, semi-monthly. Sinclair's insignia was used on all advertising and on all equipment. He could not sell on credit except to customers approved by Sinclair's credit department and then under restrictions imposed by the company. There were daily and weekly stock reports, as well as monthly stock reports and inventories, and, semi-annually the company audited Ogle's business and took a complete inventory. Ogle paid the liability insurance premiums on his truck, but the policy on one of the vehicles contained an endorsement that the policy could not be altered or canceled without written notice to Sinclair. Sinclair did not specify the routes Ogle was to follow in distributing the petroleum products but it owned the products until they were sold as well as the storage tanks. It is not necessary upon this appeal to determine the status and relationship of Ogle and Sinclair as a matter of law and so it is not necessary to set forth in greater detail the various factors and indicate the contrasting permissible inferences. Almost all possible factors are contained in this record and are set forth in the cases in which the subject has been considered. Heisey v. Tide Water Oil Co., (Mo. App.) 92 S. W. (2) 922; Cholet v. Phillips Petroleum Company, (Mo. App.) 71 S. W. (2) 799; Buchholz v. Standard Oil Co., 211 Mo. App. 397, 244 S. W. 973; annotation 116 A. L. R. 457.

The relationship of independent contractor or employee is not capable of precise delimitation but there is present here a sufficient group of the factors from which triers of the fact could reasonably find that Ogle was in the employ of Sinclair and not an independent contractor. It may not be said upon this record that Ogle is engaged in a distinct

occupation or business. 1 Restatement, Agency, Sec. 220(2) (b). He was not primarily concerned in merely bringing about contractual relations between third persons and Sinclair (Barnes v. Real Silk Hosiery Mills, supra) and he did not personally purchase Sinclair's products. Adams Dairy Company v. Dairy Employees Union, 363 Mo. 182, 250 S. W. (2) 481. The ultimate result was the sale of Sinclair's products on a commission basis. "When all of the facts are considered, it is seen that Ford's control over the business was limited indeed and that it was well-nigh within the power of the [799] company as a practical matter to dictate his every action. The company owned the goods, fixed the price, limited him to cash sales or credit terms which it imposed, owned and controlled the disposition of the proceeds of sales, and required the use of signs indicating that the station, the goods, and the trucks (contrary to fact) were its own. It was a consignment business so arranged as to leave little or no discretion to the consignee in the sale of the goods. His province was merely to find customers, make deliveries, and collect the money. There was some leeway in the choice and management of employees and in the amount of their salaries which the distributor was required to pay out of his commissions. But even here the company was the dominant figure. It is stipulated that the distributor carry workmen's compensation insurance and exacted an agreement of indemnity from the distributor as to the delicts of his employees, promises quite unnecessary if it had no responsibility for their acts. Finally it forbade the assignment of the contract and reserved the right to terminate it at will at any time on ten days' notice and thus completely put an end to the distributor's opportunity to profit by the connection." Gulf Refining Co. v. Brown, 93 F. (2) 870, 873. All the factors enumerated in the quotation are present in this case and the trial court was in error in finding and declaring as a matter of law upon this basis fraudulent joinder and failure to state a claim upon which relief could be granted (Willey v. Fyrogas Co., supra); the petition certainly stated a cause of action and the status of Ogle and Sinclair was not so plain upon this record that it could be declared as a matter of law.

What we have said inferentially disposes of Sinclair's argument that it had no control or right to control the physical movements of the truck or of the physical conduct of the operator of the truck, but it is not necessary to determine here whether the acts complained of were within the scope of the employment or were authorized (Sowers v. Howard, 346 Mo. 10, 139 S. W. (2) 897; Riggs v. Metropolitan Life Ins. Co., 341 Mo. 1, 106 S. W. (2) 1), if the relationship of employer and employee is found and Shoemaker, the truck driver, is a subagent, the principal, Sinclair would likewise be liable. 1 Restatement, Agency, Sec. 255; Gulf Refining Co. v. Brown, 93 F. (2), l.c. 874.

Fraudulent joinder and lack of proper venue could only be found in failure to state or have a cause of action and, as we have said, that does not so plainly appear upon this record as to be declared as a matter of law. Accordingly the judgments quashing the process and dismissing the actions are reversed and the causes remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.