Marguerite BARKLEY, Plaintiff-Appellant,

v.

C. R. MITCHELL d/b/a Mitchell & Dunn
Construction Company, Defend-
ants-Respondents.

No. 24340.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

John C. Risjord, Gordon, Adams, Niewald & Risjord, Kansas City, for appellant.

John J. Alder, Alder & Morrison, Richard D. Rixner, Kansas City, for respondents.

CROSS, Judge.

Plaintiff Marguerite Barkley, a Kansas City restaurant owner, brought this action against defendant C. R. Mitchell and others to recover $4,834.25 for damages sustained when her restaurant building was extensively damaged by fire while defendant and his partner George Lee Dunn, doing business as Mitchell & Dunn Construction Company, were working on the premises, pursuant to a contract to do all construction work incident to general renovation of the restaurant. Plaintiff originally entered into contract with Smith-St. John Equipment Company to restore the premises. In turn, Smith-St. John made a contract with Mitchell & Dunn, who specialized in custom interiors, fixtures and formica work, as the "general contractor" to do the construction work. That contract obligated Mitchell & Dunn in part as follows: "We propose to furnish and install all materials and labor as herein described: * * * 10) A cloud like drop will be placed over new counter; lights

to be wired by our electrician, this cloud like drop as per print. 11) The electrical work shall include moving existing switches by entry; installing a new light in entry, fixtures by us; installing lights over counter, fixtures by others, and installing a usable plug by or for cash register. * * * All work to be performed by skilled craftsmen; Workmen's Compensation and public liability to be in effect; our insurance is carried by T. H. Mastin". Mitchell and Dunn employed Thompson Electric Company to do the above noted electrical work. While employees of Thompson were so engaged, sparks from electric wires started the fire which damaged plaintiff's property. The case was tried in April, 1965, before a jury and submitted only as against defendant Mitchell. The transcript does not disclose the procedures by which Smith-St. John and Dunn were dismissed from the case as defendants. The jury returned a verdict in favor of defendant Mitchell and plaintiff has appealed from the judgment.

Plaintiff's petition preliminarily alleges the facts heretofore set out and contains additional allegations to the effect that defendant(s) negligently caused damage by fire to plaintiff's building and contents by reason of acts allegedly negligent in: failing to turn off the electric current in the wiring before undertaking to rearrange or replace the same; failing to prevent electrical arcing between the electric wires and adjacent objects; failing to recognize the risk and danger of fire after having notice thereof; failing to promptly discover the fire; failing to promptly extinguish the fire and promptly warn others on the premises of the fire so that they could do so; and, failing to properly supervise the manner in which the electrical work was done.

The transcript before us is only partial. It contains no testimony of any witness for plaintiff except for a brief cross-examination of a Mr. Schuske, who apparently testified as to the customs of the electrical trade in work practices. The circumstances of the fire appear only from defendant

Mitchell's testimony and are in substance as follows: On the day before the fire Dunn employed Thompson and directed him to see Mitchell for instructions. Thompson accordingly reported to Mitchell who explained to him "what we needed done and showed him the location of the plugs, switches, and so forth, and we agreed on a price". Thompson was not the electrician regularly used by Mitchell and Dunn because the latter was otherwise engaged. Mitchell stated he knew very little about Thompson as an electrical contractor. On the day of the fire two of Thompson's workmen reported to do the work. Mitchell instructed them generally what was to be done and they started to work and began to dismantle wires in the ceiling, without turning off the electrical current to de-energize the wires. Mitchell said nothing to the electricians about turning off the current and knew of no reason why it wasn't turned off. He stated "I had no occasion to ask them to turn the juice off, so they just went ahead and worked it". There were overhead lights in the ceiling and Mitchell was working with those lights on—"everybody had to see to work." Mitchell had long extension cords which could have been "hooked up" to provide current if the wires the electricians were "working" had been de-energized. The electricians could have "turned off the line". "All they had to do was locate the circuit, pull the plug or the breaker". That would not have bothered their work or Mitchell's work but would have made the wires "cold". It was Mitchell's position that as general contractor and in accordance with trade customs, he and Dunn were in charge of seeing that the job got done but that they were not concerned with *how* the electrical work was done or whether temporary wiring was provided so that the electricians did not have to "jerk hot wires".

Immediately prior to the fire the electricians were working on connections in a "ceiling juice box" near the front of the building. They were standing on ladders and Mitchell was within two or three feet of them. As their work proceeded, sparks be-

gan to fly from the box and so continued periodically for three or four minutes before igniting the flammable ceiling. During that time, Mitchell said, he "was probably watching the electricians to see what they were up to". He never did direct them to turn off the "juice" because "It is not my job to warn them * * * it is not my province". Of the fire's origin Mitchell stated, "Well, it sparked, and then it caught fire and then it was gone. * * * I think one of them (sparks) popped out of the box and dropped down on my head and I looked up and, boom, there went the fire". Three or four minutes later Mitchell called the fire department. When work was resumed after the fire Mitchell employed a different electrician.

Plaintiff's theory of the case was submitted against defendant Mitchell by Instruction No. 2 which directed the jury to return a verdict for plaintiff if they believed (1) that defendant agreed to remodel the premises of plaintiff, (2) that defendant as general contractor had the duty of supervising the electrical work, (3) that defendant permitted the electrician to do the electrical work with the electricity turned on, and (4) that defendant knew or by using ordinary care "would have known that by doing the electrical work with the electricity on there was a reasonable likelihood of fire", (5) that such failure was negligence, and (6) that as a direct result of such negligence plaintiff sustained damage. The instruction is not identified as derived from any MAI form.

On behalf of defendant Mitchell the court gave Instruction No. 3 in approved MAI form which conversed plaintiff's submission by directing a verdict for the defendant "if you do not believe that defendant C. R. Mitchell was negligent". Also at defendant's request the court gave Instruction No. 4 which reads as follows:

"Your verdict must be for defendant if you believe;

"First, the fire was caused by an employee of Thompson Electric Company; and

"Second, such employee was not an employee of Mitchell & Dunn Construction Company; and

"Third, Thompson Electric Company was a subcontractor to Mitchell & Dunn Construction Company, and that Mitchell & Dunn was thereby not negligent.

"MAI 13.06, as modified in notes".

Plaintiff complains of error in Instruction No. 4 principally on the ground that it is in effect a "sole cause" instruction, within the prohibition of MAI 1.03 which prescribes that "No instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence". In the Committee's Comment following MAI 1.03 three reasons are stated for the foregoing restriction, to-wit: "1. Such instructions require the recitation of detailed evidentiary facts and this practice is no longer permitted. 2. The negligence of one other than defendant is of no consequence and reference thereto is confusing and misleading. 3. The prescribed converse forms adequately present the same defense". If we interpreted the instruction as one submitting the defense of "sole cause", we would necessarily agree with plaintiff that its submission was erroneous because of the prohibition imposed by MAI 1.03.

Defendant submits that plaintiff misconceives "the purpose and composition of Instruction No. 4 in calling the instruction 'sole cause'" inasmuch as the major issue contested at the trial was whether Thompson was an independent contractor whose "duties and obligations were independent of defendant Mitchell", or whether he was Mitchell's employee, servant and agent under the latter's supervision, direction and control. It is apparent from the record that the above defined issue was of primary significance. In his answer de-

fendant Mitchell pleaded as a defense that "Thompson Electric Company (was not) the agent, servant or employee of defendant C. R. Mitchell, *or of the partnership of Mitchell & Dunn Construction Company*" and that "all allegations of such alleged agency are expressly and specifically denied". In support of this pleaded defense Mitchell offered considerable testimony to the effect that it was the trade custom of contractors to subcontract electrical work; that the general contractor does not tell the electricians anything about how to perform their work and that it is not the custom or practice to tell the electricians when the electricity is to be shut off. Having pleaded and offered evidence tending to support his theory that Thompson Electric Company was an independent contractor and that the latter's negligence was not imputable to him as the general contractor, defendant Mitchell was entitled to submit that issue by an appropriate instruction. It is obvious that Instruction No. 4 was offered by defendant and given in his behalf for that specific purpose.

◼ We now examine Instruction No. 4 to determine whether it is a proper submission of the defense that Thompson Electric Company was an independent contractor. The instruction purports to be founded upon MAI 13.06 entitled "DEFINITION— AGENCY—SERVANT OR INDEPENDENT CONTRACTOR" which reads as follows:

"Acts were within the 'scope and course of agency' as that term is used in this (these) instruction(s) if:

1. they were performed by (name of alleged servant) to serve the (business) (interests) of (name of alleged master) according to an express or implied agreement with (name of alleged master), and

2. (name of alleged master) *either controlled or had the right to control the physical conduct* of (name of alleged servant)." (Our emphasis).

The Committee's Notes on Use of MAI 13.06 inform us that "this definition is to be used only when defendant is charged with *respondeat superior* liability and there is evidence that the alleged tort-feasor was not his servant". Thus MAI has provided definitions and legal guides for use in submitting the issue whether the tort feasor was a servant (agent) or an independent contractor. Their use is mandatory in submission of the issue. Civil Rule 70.01(b), V.A.M.R. Peak v. W. T. Grant Co., Mo.Sup., 409 S.W. 2d 58.

◼ Although defendant labels Instruction No. 4 as patterned from MAI 13.06 it bears little resemblance to the claimed source. A comparison of the two writings reveals that defendant has not seen fit to use the general terminology of the pattern or to follow its legal standards in drafting the instruction. First we note the instruction's failure to hypothesize ultimate facts to justify the finding that the person who "caused" the fire was then acting in the scope and course of agency on behalf of Thompson Electric Company and that he was not so acting on behalf of defendant Mitchell. Merely hypothesizing that such person was an "employee" of Thompson and not an "employee" of Mitchell does not satisfy the requirements of MAI 13.06. Moreover, it is error to permit the jury to make those findings without some legal definition of "employee" or hypothesization of facts on which to base them. By so doing, the jury is left to formulate its own legal concept of when a person is an "employee" and what is necessary to constitute "employment", "scope of employment" or "scope of agency". It is the court's function and duty to define those terms. Inasmuch as the instruction fails to declare the law in these respects we necessarily rule that it is erroneous. Peak v. W. T. Grant Company, supra.

◼ Instruction No. 4 is further erroneous in that it directs a verdict for defendant on the basis of a jury finding (among others) that Thompson "was a

*subcontractor* to Mitchell". This direction misapplies the law. Even conceding that Thompson might have been a subcontractor in the sense that he was engaged by Mitchell to do the electrical work Mitchell was obligated to do by the general contract, such relationship was not necessarily that of an independent contractor. The word "subcontractor" is a term of inexact meaning and broad application and is defined as "One who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance". Bouvier's Law Dictionary, Century Edition. Subcontractors have been held to be both independent contractors and employees, depending upon the terms and nature of the agreement and the manner of its performance. And in determining whether a subcontractor is an independent contractor, insofar as his relation to the principal contractor is concerned, the same rules apply that are used to determine whether any other person who renders service to an original contractor is a servant or an independent contractor. 57 C.J.S. Master and Servant § 582, p. 353, and cases there cited under Note 66. Cases in which subcontractors have been held not to be independent contractors include Pribbenow v. Meeker, 139 Kan. 325, 31 P.2d 15, 16; Levy v. Long, 272 Ky. 49, 113 S.W.2d 849, 850; Waugh & Co. v. Rollison, 169 Va. 268, 192 S.E. 694. Instruction No. 4 is patently erroneous because it permits the jury to return a verdict for defendant even if Thompson, as a subcontractor, was in fact a servant and agent engaged in the scope of employment by Mitchell. This is a positive misdirection of law of highly prejudicial effect.

■ The instruction must also be condemned for still another vice of omission. The submission is fundamentally erroneous because it gives the jury no guidance whatsoever on the issue involved, but leaves them to speculate as to what tests are to be applied and what ultimate facts must be found, with reference to the reciprocal duties and obligations of Thompson and Mitchell, in order to return a verdict for defendant on the basis that Thompson was an independent contractor. The instruction thus failed to declare the law of the case on that question by defining the facts that were for the jury's determination under the pleadings and the evidence. See Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622. In Gardner v. Simmons, 370 S.W.2d 359, the Supreme Court said, "It is well established, Benham v. McCoy, supra (Mo., 213 S.W.2d 914) that the ultimate test in determining whether one is a servant or an independent contractor is the employer's right to control the details of the employee's work and so, of course, the question is not whether an employer did exercise control over the details of an employee's work but whether the employer had the right to do so. Frank v. Sinclair Refining Co., 363 Mo. 1054, 256 S.W.2d 793, 797(5)". The MAI Committee has recognized the foregoing rule as controlling on the question of whether one is a servant or an independent contractor and has incorporated it in MAI 13.06 as the ultimate test of the question. See the Committee's Notes on Use immediately following MAI 13.06 and cases therein cited and quoted from. Paragraph two of MAI 13.06 provides a form in simple language, readily adaptable for submitting the facts on which to base a finding that Thompson was an independent contractor, and to support a verdict for defendant rendered on that basis. The requirements of MAI 13.06 and Civil Rule 70.01(b) would have been satisfied if Instruction No. 4 had hypothesized that Mitchell and Dunn neither controlled nor had the right to control the physical conduct of Thompson Electric Company. Without that hypothesis the instruction is prejudicially erroneous.

■ Finally, Instruction No. 4 is prejudicially erroneous because in directing a verdict for defendant if the jury believed the fire was caused by a "subcontractor" it is inconsistent with and contradictory of

Instruction No. 2 which directed a verdict for plaintiff on findings that defendant as general contractor "had the responsibility of supervising the electric work" and negligently "permitted and allowed the electrician to do the electrical work with the electricity on". Even if the jury believed the *immediate physical cause* of the fire was some act done by an employee of the "subcontractor", defendant was not entitled to a verdict under Instruction No. 4, as we have previously demonstrated. Furthermore, whether the fire was "caused" by an employee of the "subcontractor" was immaterial under plaintiff's theory of recovery submitted by Instruction No. 2 which predicated defendant's liability on defendant's own direct and primary acts of negligence as distinguished from the separate negligent acts of an alleged employee giving rise to application of the *respondeat superior* rule. Inasmuch as the two theories are in direct conflict, and defendant's theory is erroneous, we necessarily conclude that the effect of Instruction No. 4 was to mislead and confuse the jury. For cases holding that it is error to give conflicting and contradictory instructions on a material issue, see 27 Mo. Dig. Trial, ▮

Plaintiff also contends the court erred by receiving in evidence testimony of defendant Mitchell and his partner Dunn offered in an attempt to establish that there was a custom in the construction trade to the general effect that the general contractors hired independent contractor electricians to do the electrical work; that the general contractors exercised no supervisory control over the electricians or the details of their work; and, in particular, that whether the electric current is turned off is for the electrician to decide—not the general contractor. The specific complaint is that both Mitchell and Dunn gave testimony as to their custom and manner and methods of doing *their own* construction work, as distinguished from the custom generally observed by the construction trade. Inasmuch as the several errors in Instruction No. 4

require reversal of the judgment, discussion of this additional question is not essential, except as a guide to the court and counsel upon a retrial.

▮ In determining whether a supervisory responsibility rested upon defendant as a general contractor when the electrical work was being performed by the subcontractor electrician, and whether defendant was negligent in failing to supervise the details of that work in the respects charged, and permitting it to be done with electricity turned on, it is proper to consider the common custom or usage of the construction trades in that respect. 65 C.J.S. Negligence § 16, p. 594; Stein v. Buckingham Realty Co., Mo.App., 60 S.W.2d 712; 22 Mo.Dig., Negligence, ▮ And it is recognized that the general practice in a trade or industry is a test of negligence subject to the exception that "no usage can make a practice, which is inherently unreasonably dangerous, reasonably safe". Carlisle v. Tilghmon, Mo.Sup., 174 S.W.2d 798. Also see Gatzke v. Terminal R. R. Assn. of St. Louis, Mo.Sup., 321 S.W.2d 462 and Thompson v. Kroeger, Mo.Sup., 380 S.W.2d 339.

▮ Defendant adduced considerable evidence consisting of his own testimony and that of his former partner Dunn tending to establish the existence of a uniform trade custom in the area of Kansas City, observed generally by those engaged in the construction trades, to the effect that general contractors let the electrical work by subcontract to electricians, that the electricians performed their work without supervision by the general contractors, and that the electricians—not the general contractors—made the decisions whether the current should be turned off while proceeding with their work. Evidence of the nature above noted is not objectionable and is admissible under the rule stated by the Supreme Court in Wright v. Chicago, Burlington & Quincy R. R. Co., 392 S.W.2d 401, as follows: "The evidence of custom and practice here is within the standards

of admissibility in a leading case on the subject, Davis v. Gatewood, Mo., 299 S.W. 2d 504. The witnesses possessed knowledge of the existence of the custom; it was not confined to the practice of certain individuals only; the testimony related to definite uniform and known practices under certain definite and uniform circumstances; and the existence of the custom or usage here is a matter of fact susceptible to proof as any other fact".

However, certain portions of defendant's evidence offered to establish the existence of the alleged custom above referred to are improper and objectionable in that they relate to the practices of defendant and his witness Dunn in the conduct of their own business, as individuals, and not to the practices followed generally by those engaged in like trades. Illustratively, we quote excerpts from the record:

"Question: Let me ask you whether or not it is your custom in doing work as a general contractor to hire independent contractor electricians?

Mr. Risjord: Object to what his custom is as irrelevant and immaterial.

The Court: Overruled.

\*   \*   \*   \*   \*   \*

"Question: Now, do you as the contractor tell him details of what to do?

Answer: Such as how to do it?

Question: Yes.

Answer: No, sir.

Mr. Risjord: Again, if the Court please, I will object to evidence as far as what he generally does in his business. I don't think that has anything to do with this law suit. If it is confined to this law suit—

The Court: Overruled.

Mr. Risjord: It is irrelevant and immaterial".

\*   \*   \*   \*   \*   \*

"Question: Do you as a contractor, on the job, tell him details of what to do, on the general outline of the work?

Answer: You do not tell the workman how to go about his business, he is not an employee of yours. He would bow his back and you'd never get the job done. His boss tells him what to do.

The Court: No, that wasn't the question. Now let's get along with this law suit.

Question: All right, let me ask you, when an electrical contractor comes on the job to do a certain piece of work, electrically, who is the one who states whether the current should be turned off or not—

Mr. Risjord: Object to that for the reason it is not—He hasn't limited the question to custom and trade usage or shown that this man has knowledge of what that usage is. He is simply asking him for his jobs, which is irrelevant and immaterial.

The Court: Overruled.

Question: Can you answer the question, sir.

Answer: Do we—as a contractor, do I tell a man when to turn the juice off?

Question: Yes.

Answer: No, sir, the electrician tells me when it is going to be off".

Testimony such as the above quoted is improper and objectionable and upon retrial of the case should be excluded. "Defendant's own custom, as distinguished from general custom, is not a proper matter for consideration in determining whether his conduct or methods were negligent, since a lack of due care is not to be excused because the person charged therewith has become accustomed to carelessness in the performance of his duties". 65 C.J.S. Negligence § 16, p. 601. Also see Davis v. Gatewood, Mo.Sup., 299 S.W.2d 504; Car-

**826**

ver v. Missouri-Kansas-Texas R. Co., 362 Mo. 897, 245 S.W.2d 96.

In a third point plaintiff complains that defendant's counsel in argument to the jury improperly commented upon plaintiff's failure to produce the electrician Thompson as a witness. We do not deem it necessary to consider the question thus raised, inasmuch as it will not likely recur upon a retrial.

Bearing in mind that generally this court's decision on all points presented and decided becomes the law of the case on those issues in subsequent proceedings in the cause,[1] we emphasize that no question has been raised, and no decision has been made by this court, as to whether plaintiff's verdict directing instruction (No. 2) was a proper submission of her case. We can offer no clear guide to the trial court in determining that question at a subsequent trial because (1) plaintiff's evidence at the first trial is not before us and (2) conceivably her evidence at another trial might differ in material respects from her evidence at the first trial. We do suggest that certain principles recognized in the law of negligence that have not been brought to our attention in this appeal may have some bearing on the submission of plaintiff's case on the theory that defendant had a non-delegable duty to supervise the electrical work and to take reasonable precautions against dangers inherent therein—all depending upon the facts that may be developed at the next trial.

One of the well recognized exceptions to the general rule that the employer of an independent contractor is immune from liability for the tortious act of the independent contractor or his servants is the rule stated in 2 Restatement, Torts, Secs. 413, 416 and quoted with approval by the Supreme Court in Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S.W.2d 718, as follows: "One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions". Also see Southwestern Bell Telephone Co. v. Rawlings Mfg. Co., Mo.App., 359 S.W.2d 393. And, if the circumstances developed at another trial of the instant case fall within this rule, a primary, nondelegable duty would be imposed upon defendant as employer of the electrical contractor and he "may not escape that duty or responsibility upon the plea of independent contractor. Annotations 23 A.L.R. 984; 115 A.L.R., 1. c. 977". Stubblefield v. Federal Reserve Bank of St. Louis, supra.

The judgment is reversed and the cause is remanded for a new trial.

All concur.

---

1. See Norris v. Bristow, 361 Mo. 691, 236 S.W.2d 316, 26 A.L.R.2d 366; 3 Mo.Dig., Appeal and Error, ☜1097(1).