**Kenneth SHARP, Respondent,**

v.

**W. & W. TRUCKING COMPANY, Appellant.**

**No. 52600.**

Supreme Court of Missouri, En Banc.

Nov. 13, 1967.

Rehearing Denied Dec. 11, 1967.

Clifford B. Smith, Kansas City, for respondent.

Harold T. VanDyke, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant.

STORCKMAN, Judge.

This is a personal injury action wherein the jury returned a verdict for $13,000 against the defendants Cleodis Brown and W. & W. Trucking Company, a corporation. The defendant Brown did not appeal. The judgment against the defendant Trucking Company was appealed to the Kansas City Court of Appeals where it was affirmed. On order of this court, the cause was transferred pursuant to Art. 5, § 10, of the 1945 Constitution of Missouri, V.A.M.S. The

appellant will for convenience sometimes be referred to as the Trucking Company, W. & W., or the defendant.

■ The primary contention on appeal is that the trial court erred in refusing to sustain the Trucking Company's motion for a directed verdict at the close of all the evidence. Additional contentions are that certain documentary evidence was erroneously admitted, that the court erred in giving oral instructions to the jury, and that the verdict is excessive. In determining whether a submissible case was made against the defendant Trucking Company, the evidence must be reviewed in the light most favorable to the plaintiff, and he is entitled to all reasonable inferences arising from the evidence. Gardner v. Simmons, Mo., 370 S.W.2d 359, 360[1].

Bowen Construction Company and Blue Valley Crushed Stone Company operated an asphalt plant and rock quarry at 1201 Manchester in Jackson County. These two corporations were owned by the same persons; they produced building and paving materials which were hauled by motor trucks from the plant to job sites of customers. In 1962 this hauling was done by A-1 Trucking Company, apparently a voluntary association of about 50 truckers. This arrangement proved unsatisfactory and early in 1963 the Bowen companies went back to dealing directly with individual truckers. The W. & W. Trucking Company was incorporated in October 1962 by Henry Woodward and Booker T. Washington. In March 1963 the Trucking Company made a verbal agreement with the Bowen companies to do their hauling and it was so performing on May 6, 1963, when the accident in question occurred. A written agreement between Bowen and the Trucking Company was not executed until June 19, 1963.

The agreement between Bowen and W. & W. Trucking Company granted the Trucking Company the sole and exclusive right to haul and deliver all the crushed stone, gravel, asphalt and other building materials shipped by motor truck in bulk from Bowen's premises at 1201 Manchester. The Trucking Company was required to own or hire and operate a sufficient number of trucks not exceeding 30 to do all of Bowen's hauling. The Trucking Company agreed to employ capable and competent men and equipment in good repair and Bowen had the right to reject any drivers or trucks unsatisfactory to it. The Trucking Company agreed to be liable for the value of any load it failed to deliver.

The defendant Cleodis Brown was the owner of two trucks, one of which he drove. He employed Ralph Murray to operate the other one. Brown had hauled Bowen construction materials as a member of A-1 Trucking Company and continued with W. & W. Company under an oral arrangement which will be more fully described later. On the morning of Monday, May 6, defendant Brown made some repairs to the truck operated by his employee Murray and was driving it from his home at 1620 Myrtle to the Bowen plant when he collided at 17th and Jackson Street with a motor vehicle driven by the plaintiff who was severely injured. Brown's defense was failure of his air brakes to operate when he undertook to stop at a traffic sign. The jury found against Brown on the issue and, since he did not appeal and the defendant W. & W. does not raise the question on appeal, we need not consider further the issue of Brown's negligence.

The question for determination on this appeal is the responsibility of W. & W. for Brown's acts. The pleadings and instructions designate the standards under which the plaintiff claims the Trucking Company is liable. The petition charges that Cleodis Brown at the time of the collision in question was operating his truck on the business of W. & W. Trucking Company and was acting within the scope of his employment as its agent. Instruction No. 3 directing a verdict against the Trucking Company required the jury to believe that "the driver, CLEODIS BROWN, was operating his motor vehicle within the scope and course of his agency for W & W TRUCKING COM-

PANY at the time of the collision". See MAI No. 18.01. Instruction No. 4 states that "Acts were within the 'scope and course of agency' as that term is used in these instructions if: 1. they were performed by CLEODIS BROWN to serve the business of W & W TRUCKING COMPANY according to an express or implied agreement with W & W TRUCKING COMPANY, and 2. W & W TRUCKING COMPANY either controlled or had the right to control the physical conduct of CLEODIS BROWN." See MAI No. 13.06. The instructions thus submit the issues of whether Brown was operating his vehicle within the scope of his agency and define acts within the scope and course of his agency as being performed "to serve the business" of the Trucking Company "according to an express or implied agreement" and that the Trucking Company "either controlled or had the right to control" Brown's physical conduct.

The agreement between the Trucking Company and Brown for hauling Bowen's materials was wholly oral. Nevertheless, the trial court admitted in evidence over defendant's objection a form of written contract which purported to be a lease of an owner's truck to W. & W. for five years and an agreement by the owner to work for W. & W. for the same period of time. Brown refused to sign such a contract. The defendant Trucking Company contends the admission of this Exhibit 7 was erroneous in that it injected a collateral issue, was not a proper method of proving the agreement between Brown and the Trucking Company, and was misleading and confusing to the jury. The exhibit consists of three separate printed sheets or pages. One is a truck "LEASE" to be signed by both parties whereby the trucker agrees to lease his truck to the Company for a period of five years in consideration of the payment by the Company of the sum of ninety percent of the gross revenue derived from the earnings of the truck during the term of the lease. The trucker agrees to store and care for the truck, to make necessary repairs, not to lease, rent, pledge or hypothecate the truck without the Company's written consent, that the earnings from the use of the truck shall be paid to the Company and it shall pay the trucker ninety percent thereof, and if the trucker breaches any of the terms or conditions of the lease he shall become liable to the Company for an amount equal to the average earnings of the truck for the previous twelve-months' period. The Company reserves an option to renew the lease for an additional term of five years. The Company can cancel the lease if the trucker breaches "any of the terms and conditions of this lease or of the Rules and Regulations attached hereto and made a part hereof."

There were 14 items on the second sheet of the exhibit entitled "RULES, REGULATIONS AND PENALTIES". Their full text is not important. To indicate their general nature, it is sufficient to say that the trucker agrees that all drivers and owners shall observe yard and lot courtesy, cooperate, be union members, maintain neat and clean personal appearance, keep trucks in good working condition, refrain from the use of alcohol or drugs on the job, obey orders, not indulge in loud, boisterous or profane conduct while on the job, observe traffic laws and ordinances, complete all jobs started, and carry liability insurance for personal injury and property damage in an approved company in the amount required by state law. The third sheet of the agreement is designed for signing by the trucker alone. By its terms he agrees to work exclusively for the Company for a period of five years "at the election" of the Company for any of its signed contract jobs and that his truck is "leased and firmly bound" to the Company for any of its signed contract jobs. The trucker further agrees that all of his earnings and the earnings of his truck shall be paid directly to the Company of which the Company would retain ten percent, and that he will report at all times his places of employment to the Company.

The defendant Cleodis Brown, called as a plaintiff's witness and examined solely as to the nature of his agreement with W. & W. Trucking Company, identified the form of

unsigned contracts, Exhibit 7, and testified he did not sign any such contract or any working agreement. He summed up his agreements and reasons for them as follows: "I agreed to W. &. W. that my truck would be on the job at all times whenever they needed a truck, I would abide by their rules and regulations. I didn't sign a five-year contract, because I didn't want the truck tied up five years. I am new at the trucking business, I didn't know exactly how it would last—in other words, W. & W. didn't exactly have a signed contract at that time themselves, I didn't want to sign with them, because they wasn't signed." Although Brown's agreement was entirely oral, it was repeatedly referred to in the trial court as a "lease agreement" and plaintiff's counsel was permitted to interrogate him about each provision of Exhibit 7 and whether he agreed to it. The exhibit was passed to the jury for their examination despite the fact that it contained irrelevant and incompetent matters, such as the requirement that the truckers carry liability insurance for personal injuries and property damage.

Furthermore, the written contract or contracts are of doubtful validity for lack of consideration and mutuality in that it is not readily apparent that W. & W. obligates itself to provide a minimum amount of work or earnings. This bears on the charge that a collateral issue was injected. That the jury was probably misled and confused is indicated by questions asked by jurors during the trial and especially in connection with the instructions. The inquiries resulted in a lengthy dialogue between the trial court and jury which gave rise to another claim of error in that the court instructed the jury orally. Mr. Brown was permitted to draw the conclusion that he was agreeable to all provisions of the contract offered except the five-year term. Such roundabout methods of proving the relevant terms of an oral agreement are extremely questionable. See Walton v. United States Steel Corp., Mo., 362 S.W.2d 617, 625[7], and University City v. Home Fire & Marine

Ins. Co., 8 Cir., 114 F.2d 288, 294[4–7]. In the view we take of the case, however, it is not necessary to rule on the admissibility of the exhibit since we have concluded that all of the evidence in the record viewed in its most favorable light is not sufficient to make a submissible case against W. & W. Trucking Company.

The plaintiff-respondent sets out in his brief the evidence he deems sufficient to make a submissible case on the issues of whether Brown was serving the business interests of W. & W. and whether W. & W. had the right to control Brown's physical conduct at the time of the accident. In substance it is that "Brown leased his trucks" to W. & W. and garaged them at his home as required by the Trucking Company and that Brown was furthering defendant's business when the accident occurred in that he was in the act of furnishing motor trucks "in good working condition" to the defendant. The plaintiff further states that Brown worked regularly and exclusively for the defendant W. & W. and reported for work every workable day from the middle of March to the date of the accident; that Brown followed orders and complied with all rules and requirements in the conduct of his work; that the defendant had the right to terminate Brown for insubordination or for violation of any of the rules set up for his conduct; that Brown was required to be a union member and the defendant deducted union dues; that the only business of W. & W. was trucking and under its agreement with Bowen it was required to furnish suitable and serviceable motor trucks in good repair and was required "to own, hire, and *operate* these properly licensed motor trucks suitable for hauling Bowen's materials" which it did by hiring and employing the various truckers under strict rules and agreements as to the way its business was to be conducted. Specifically in this connection, the respondent in his brief states: "Cleodis Brown was told to report with his truck out to 1201 Manchester on the date of the accident (Tr. 129). Pursuant to such instruction he had sent his other truck to

1201 Manchester earlier that morning. On Monday, May 6, 1963, Cleodis Brown was proceeding along his usual route to the Bowen Plant when the accident occurred (Tr. 102). These facts alone constitute substantial probative evidence that Brown was under the direction and control of appellant, and subject at least to its right of control at the time of the accident." The respondent asserts that under the evidence most favorable to him there is substantial proof that the relation between W. & W. and Brown was that of master and servant and that Brown was not an independent contractor.

■ The plaintiff persists on appeal as he did in the trial court in asserting that Cleodis Brown "leased his trucks" to W. & W.; he infers that a relation was created which gave the Company some measure of control over them at all times. A distinctive feature of a lease of property, real or personal, is that it conveys an interest in the property for a fixed or definite period of time and is supported by a consideration. State v. Cordray, 200 Mo. 29, 98 S.W. 1, 2[3]; Kolb v. Golden Rule Baking Co., 222 Mo.App. 1068, 9 S.W.2d 840, 843[3]; Hahs v. Cape Girardeau & C. R. Co., 147 Mo.App. 262, 126 S.W. 524, 528–529[7]; Joplin Supply Co. v. West, 149 Mo.App. 78, 130 S.W. 156, 161[5]. There is not the slightest evidence that W. & W. had a *lease* on the trucks. In fact the main reason given by Brown for refusing to sign a contract with W. & W. was to avoid committing his truck for a definite period of time. There is no proof that W. & W. had any possessory or other property interest in Brown's trucks.

■ For similar reasons Brown refused to sign the third part of Exhibit 7 which purported to be an agreement by him "to work exclusively" for W. & W. The hauling agreement between Brown and W. & W. was altogether oral and was not for a definite period of time. A contract for an indefinite period of time may be terminated at the will of either party. Superior Concrete Accessories v. Kemper, Mo., 284 S.W. 2d 482, 490[15, 16]; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 271[17]. The Trucking Company had no claim upon the services of Cleodis Brown or the use of his trucks that could not be terminated at the will of Mr. Brown. If he did not report for work or permit his trucks to be used, he incurred no liability. Furthermore, the printed list of rules and regulations to which Brown says he agreed are largely standards of behavior and good business conduct, observance of which would be expected of anyone performing a service. Since the hauling agreement was terminable at the will of either party, it could be ended at any time for any reason or for no reason at all. The fact that Cleodis Brown orally agreed to observe the rules and regulations is of no significance on the issues involved; nor is the fact that Brown was required to be a union member and the Trucking Company withheld his dues. It is a common requirement that all workmen on a job be union members even though they are working under independent contracts. The fact that Brown repaired, maintained and stored his truck or trucks at his home is quite consistent with his being an independent contractor and does not tend to prove plaintiff's contentions.

Cleodis Brown was paid on a ton-mile basis for materials delivered. This payment included the use of the truck as well as the services of the driver. Unless he was actually delivering materials, he was not earning. There was no guarantee that Brown would be given the opportunity to haul any certain number of loads and hence earn any certain amount. The compensation of W. & W. Trucking Company was the ten percent it got from the earnings of the truckers. The evidence is quite persuasive that Cleodis Brown was an independent contractor whose obligation was limited to the delivery of each cargo successively entrusted to him without being subject to the right of control by W. & W. over his physical conduct in the manner of doing so. See Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918[12], and Dean v. Young, Mo., 396 S.W. 2d 549, 553–554[3, 4]. It is not necessary,

however, for us to decide the precise relation involved.

■ Even though it be assumed for the purpose of the case that the relation between W. & W. and Brown was that of master and servant, it does not follow that the plaintiff has made a submissible case. The mere existence of the relationship of employer and employee is not sufficient in and of itself to impose on the employer in all circumstances liability for whatever torts the employee may commit since not all acts of an employee are as an employee or in the course and scope of his employment. Hopkins v. J. I. Case Company, Mo., 293 S.W.2d 402, 405[1]; Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365, 368–369[6–9]; Usrey v. Dr. Pepper Bottling Company, Mo.App., 385 S.W.2d 335, 338[2]; Restatement of the Law Second, Agency 2d § 233, p. 516.

Although it is disputed in some particulars, the evidence most favorable to the plaintiff is that Cleodis Brown reported to the Bowen plant at 1201 Manchester on Saturday, May 4, 1963, but did not get any hauls that day and Booker T. Washington told him to come back on Monday, May 6. On Monday Brown sent one of his trucks to the plant by his driver Murray. Mr. Brown directed Murray to tell Booker that he, Brown, would be a little late with the other truck. Thereafter, Brown got the necessary parts and completed the repairs on the other truck. He was driving the truck from his home to the Bowen plant along his usual route when the accident in question happened at approximately 10 a.m.

■ "It is generally held that getting to the place of work is ordinarily a personal problem of the employee and not a part of his services to his employer, so that in the absence of some special benefit to the employer other than the mere making of the services available at the place where they are needed, the employee is not acting within the scope of his employment in traveling to work, even though he uses his employer's motor vehicle, and therefore the employer cannot be held liable under the doctrine of respondeat superior to one injured by the employee's negligent operation of the vehicle on such a trip." 8 Am.Jur.2d, Automobiles and Highway Traffic, § 630, p. 184. See also 60 C.J.S. Motor Vehicles § 453c p. 1163, and Annotation: 52 A.L.R.2d 354, § 3[a]. The Missouri cases are in accord with this general rule. See Talley v. Bowen Construction Co., Mo., 340 S.W.2d 701, 706[9]; Sherwood v. Arndt, Mo., 332 S.W. 2d 891, 893[1]; Stokes v. Four-States Broadcasters, Mo., 300 S.W.2d 426, 429[5]; Curtis v. Juengel, Mo.App., 297 S.W.2d 598, 601; Randall v. Steelman, Mo.App., 294 S. W.2d 588, 592[2]; Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852, 855[1]; Van Hook v. Strassberger, Mo.App., 259 S.W.2d 399, 405[6]; Stone v. Reed, Mo.App., 247 S.W.2d 325, 331[6]; Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761, 766[9]; and Halsey v. Metz, Mo.App., 93 S.W.2d 41, 44[1].

Gardner v. Simmons, Mo., 370 S.W.2d 359, cited by the respondent, also recognizes the "going-and-coming rule" but holds it not applicable to the facts of that case. The defendant Simmons was employed by a tire company as an inside and outside salesman and service man on a salary plus commissions and was required to furnish his own automobile for transportation. His car broke down on his way to work. He hitchhiked to work and with another employee kept a business appointment. Then with an automobile mechanic he went to his disabled car, got it started, and while it was being road tested the accident occurred. The opinion points out that since Simmons had gotten to work and transacted business a jury question was presented as to whether he was acting within the scope of his employment at the time in question. 370 S.W. 2d at page 364[8]. Madsen v. Lawrence, Mo., 366 S.W.2d 413, is also distinguishable on the facts. The driver of a truck engaged to haul dirt from an excavation had arrived at the job site. While waiting for a load he parked his truck, left it unattended, and it rolled down an incline and injured a child. This court held the trial court did not err in

granting the plaintiff a new trial on the ground a verdict in favor of the excavator was against the weight of the evidence.

██ We are mindful of the rule that whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and that no single test alone is conclusive of the ultimate issue of the party's interest in the activity and his right of control. Gardner v. Simmons, Mo., 370 S. W.2d 359, 360–361[2]. We have so considered the evidence.

██ Cleodis Brown was on his way to work traveling in a motor vehicle owned and operated by him and which he maintained at his own expense. The route he took was of his own choice. He was not being paid wages or a salary. His earnings depended entirely upon hauling actually done and was based solely on ton-miles. In order to get and perform hauling assignments satisfactorily Brown had to keep his trucks in good working condition whether W. & W. required it or not. He reported for work on the previous Saturday but did not get to haul anything that day; he had no guarantee that there would be any loads for him to haul on Monday, May 6. There is no evidence that W. & W. Trucking Company would derive any special benefit from the trip other than the general benefit incident to truckers making their "services available at the place where they are needed". Nor is there any evidence that W. & W. had any control or right of control over how, when, or if Mr. Brown got to the Bowen plant. There is nothing in the record to distinguish Mr. Brown's status from that of myriads of other persons who drive themselves to work each day in their own automobiles without exposing their employers to liability for their tortious acts en route. The general rule applies.

Under the evidence and on authority of the decisions heretofore cited, a submissible case was not made against the defendant W. & W. Trucking Company and the trial court erred in refusing to sustain its motion for a directed verdict. In view of this holding, it is not necessary to rule other questions presented.

The judgment against defendant W. & W. Trucking Company is reversed and the cause is remanded with directions to enter judgment in favor of such defendant.

All concur.