Carolyn S. GARDNER, Appellant,

v.

Boyd Dwight SIMMONS, and C. E. Russell, doing business as Russell General Tire Service, Respondents.

No. 49646.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Leland C. Bussell, Joe C. Greene, Bussell & Hough, Springfield, for appellant.

B. H. Clampett, Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, for respondents, C. E. Russell.

COIL, Commissioner.

Mrs. Carolyn Gardner claimed $20,000 as damages for injuries she allegedly sustained when she was a passenger in an automobile driven by her husband and which injuries she averred were the result of the negligence of respondent Simmons. Respondent Russell was joined as a defendant on the theory that Simmons was his agent acting within the scope of his employment at the time of the accident. At the close of all the evidence the trial court directed a verdict for the employer, Russell. The jury awarded Mrs. Gardner $3,500 against the employee, Simmons. Mrs. Gardner has appealed from the ensuing judgment and here contends the trial court erred in directing a verdict for Russell and in refusing to grant her a new trial on the ground that the verdict was so inadequate as to indicate bias, prejudice, and misconduct on the part of the jury and on the ground that respondent Russell was permitted to improperly cross-examine appellant with respect to prior accidents.

Respondent Simmons has not appealed from the judgment against him and has not filed a brief.

Respondent Russell contends that the trial court correctly directed a verdict for him for the reasons that the evidence showed as a matter of law that Simmons was an independent contractor and not Russell's employee and because, even if Simmons was an employee, he was not acting within the scope of his employment at the time of the accident.

In determining whether Simmons was an independent contractor and thus that Russell was not liable under the doctrine of respondeat superior, we consider the evidence and the reasonable inferences to be drawn therefrom in the light most favor-

able to appellant and disregard respondents' evidence not favorable to her and contrary to her evidence, Becker v. Aschen, 344 Mo. 1107, 131 S.W.2d 533, 535[1–4], and we bear in mind that "Each case must depend on its own facts and no single test considered alone is conclusive of the ultimate test, the right to control. * * * [and] * * * If the facts and legitimate inferences to be drawn therefrom are in dispute the issue is one for the jury. * * Further, whether or not the right of control existed in a particular case is ordinarily a question of fact for the jury." Benham v. McCoy, Mo., 213 S.W.2d 914, 919[7–11]. Furthermore, contrary to Russell's contention, the burden of proof on appellant "was only to prove the fact of agency, and not to disprove the theory of independent contractor." Mattocks v. Emerson Drug Co., Mo.App., 33 S.W.2d 142, 144 [5]; 57 C.J.S. Master and Servant § 501b (2), p. 68.

The evidence so viewed tended to show these facts. Boyd D. Simmons had been employed by C. E. Russell, d/b/a Russell General Tire Service, in Springfield for the fourteen months prior to the accident on March 20, 1961. He was employed for the purpose of calling on and attempting to sell tires to commercial accounts, such as trucking companies and others who owned trucks, to sell merchandise in Russell's tire store, and to make adjustments with purchasers of tires, apparently who had complained that a particular tire had not given proper service. Those adjustments were made in the store. Simmons was paid a salary of $400 per month and, if he sold sufficient merchandise, would receive commissions in addition to the $400. At the time Simmons was hired, Russell told him that he would need an automobile and that Russell would not furnish one. Consequently, the understanding between the parties was that Simmons would furnish his own transportation and he said nothing was said about whether he would get compensation for automobile expenses —it simply was understood that Simmons would furnish his own transportation, and that it was necessary that Simmons have an automobile in order to keep his job. Russell furnished Simmons with the names of some accounts to call on and he instructed Simmons to go along with a Mr. Hueton, who was a representative of General Tire Company who lived in Joplin, whenever Simmons felt it would be advantageous. On the morning of March 20, 1961, Simmons had an eight o'clock appointment with Hueton at Russell's store from where the two were to call on Ozark Wholesale Grocery Company in an attempt to sell that organization some tires. Mr. Simmons lived in Ash Grove (a few miles west of Springfield) and was driving on Highway 160 toward Springfield when his car stopped running. He left it on the shoulder and hitch-hiked to a place close to his employment. He arrived at the Russell General Tire Service about 8:30 a. m., and his employer inquired as to why he had not been there to keep the eight o'clock appointment with the General Tire representative. Simmons explained that his car had quit running and that he had hitch-hiked. Hueton had waited for Simmons and they left in Hueton's car for the Ozark Wholesale Grocery Company.

Upon completion of that call, by prearrangement Hueton took Simmons to the home of a Mr. Anderson (who was a mechanic and who had theretofore done work on Simmons' automobile) to engage him to see what was wrong with Simmons' car. Anderson followed them (Hueton and Simmons) in his automobile and upon arrival at Simmons' car Hueton left to return to Joplin. Anderson, the mechanic, checked and adjusted the points on Simmons' automobile and then discovered that there was no gasoline in the car although the gauge showed there was. After getting the car started, Simmons in his car and Anderson in his, drove back to Anderson's house whereupon Anderson got into Simmons' car in order to "check it out" to see whether anything else needed to be done to it so that Simmons could go back to work. While

they were checking the automobile (with Simmons driving), the accident giving rise to this litigation occurred.

After the accident and the usual statements to the police, etc., Simmons and Anderson had lunch and returned to Russell General Tire Service and Simmons "continued his work there that afternoon."

■ It is well established, Benham v. McCoy, supra, that the ultimate test in determining whether one is a servant or an independent contractor is the employer's right to control the details of the employee's work and so, of course, the question is not whether an employer did exercise control over the details of an employee's work but whether the employer had the right to do so. Frank v. Sinclair Refining Co., 363 Mo. 1054, 256 S.W.2d 793, 797[5]. We bear in mind also that the only question on this aspect of the case is whether appellant made a submissible case as to the existence of a master-servant relationship between Russell and Simmons at the time of the accident, even though there may have been other evidence from which a jury reasonably could have found that Simmons was an independent contractor and, further, as noted heretofore, that the burden was not on plaintiff to disprove the theory that Simmons was an independent contractor.

■ It is clear to us that there was substantial evidence from which a jury reasonably could have found that Russell had the right to control the manner in which Simmons performed the duties for which he had been employed. The reasons for that conclusion are these. The evidence showed that Simmons was employed not only to make outside sales to commercial accounts but his duties also included selling to customers who came into the tire store and making tire adjustments in that store; that Mr. Russell furnished Simmons a partial list of accounts on which he was to call and that Russell directed Simmons to cooperate with the General

Tire Company's representative when such seemed advantageous to the promotion of Russell's business. The foregoing evidence was substantial and sufficient to support a reasonable inference that Russell had the right to direct Simmons to stay in the store all day or each day for a week or for an hour on certain days or for three hours every day, or for any other periods of time the employer might choose, and that Russell had the right to require Simmons to sell tires and make tire adjustments during the periods when he was in the store, and that Russell had the right when he so chose to tell Simmons on whom he was to call for outside commercial sales. The evidence showed further that Russell paid Simmons a fixed salary of $400 per month irrespective (in so far as the evidence shows) of whether Simmons sold any merchandise to commercial accounts and that he was to receive commissions in addition to his fixed salary only in the event that commissions on his total sales exceeded the amount of his stated salary. The fact of the fixed salary is important in connection with the further fact that the employer did not furnish an automobile or pay for the operation of Simmons' automobile, because under the evidence in this case the jury reasonably could have found that the facts that Simmons furnished his own automobile and paid the expenses therefor were considered by the employer in fixing the amount of Simmons' monthly salary. See Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761, 766.

With respect to the automobile question, respondent Russell contends (in another portion of his brief, but probably we should here interpolate our determination of that question) that there was no agreement that an automobile was to be furnished by Simmons as a means of transportation; that the only agreement was that Simmons was to furnish his own transportation with complete freedom of choice as to the mode. The transcript discloses, however, that there can be no doubt but that the conversation between Russell and Simmons at the time

of Simmons's employment with respect to transportation was subject to the reasonable interpretation, and a jury could have so found, that an automobile was required to be furnished by Simmons as a condition of his employment. The record reflects these questions and answers in that respect:

"Q. At the time he told you to come to work for him, did he tell you that you would need a car for transportation to call on the commercial accounts? A. Yes, he did.

"Q. And did he furnish you with an automobile? A. No.

"Q. Was it the understanding then between the two of you that you had to furnish your own transportation? A. That's correct.

"Q. Was there anything said at the time that you originally started your employment, about compensation for this automobile; was there anything said about your wages, would your wages include the maintenance of your own automobile? A. Well, not directly in that form, no.

"Q. Tell me what form it was in then. A. Well, there wasn't anything discussed about it other than the fact that I would just have to furnish my own transportation for this work.

\*   \*   \*   \*   \*   \*

"Q. Now, Mr. Simmons, you stated just a moment ago, I believe, that it was necessary that you have this automobile to get the job. No transportation was furnished for you and it was necessary that you have the automobile then to keep the job, is that right? A. That's correct."

The foregoing portions of the record supported a reasonable finding that an automobile was required to be furnished by Simmons in order for him to obtain the job. See Hoelker v. American Press, 317 Mo. 64, 296 S.W. 1008, 1009, 1010, 1012.

Respondent Russell relies entirely upon our recent case of Kickham v. Carter, Mo., 335 S.W.2d 83, to support his con-

tention that appellant failed to make a submissible case on agency because, he says, the evidence showed as a matter of law that Simmons was an independent contractor. Respondent Russell points to many claimed similarities between the status of Carter, the salesman in the Kickham case, and the status of Simmons in the present case. There are similarities, as of course would be most probable in any cases wherein a salesman, employed solely or partially for outside selling, used his own automobile without specific compensation for the expenses thereof. Be that as it may, presently more important is the fact that there are decisively distinguishing dissimilarities between the status of Simmons in this case and the position of Carter in the Kickham case. In our view, entirely sufficient to distinguish the Carter case from the present one are these facts: In the present case there was a fixed monthly salary plus commission, whereas Carter was paid strictly on a commission basis; in the present case the jury reasonably could have found that Simmons was required to have and use an automobile, whereas Carter could choose any mode of transportation; in the present case Simmons was employed specifically to make inside sales and to handle tire adjustments at the General Tire Service store in addition to selling outside to commercial accounts and was subject to the direction of his employer as to when and how long to stay in the store and, to some extent, as to who to call on outside the store, whereas Carter "could fix his own hours of work, choose his own territory, and the employer could not direct that he call on any particular customer." 335 S.W.2d 88.

We are of the opinion that there was substantial evidence from which the jury reasonably could have found that Simmons was the agent of Russell and, consequently, that the issue was for the jury.

The next question is whether Simmons was engaged in the prosecution of Russell's business at the time of the accident. Again, as when considering whether Simmons was

a servant or an independent contractor, in determining this question of the scope of employment, "we review the evidence in the light most favorable to plaintiff, give to her the benefit of all favorable inferences flowing therefrom and disregard defendant's evidence except as it may aid plaintiff. Daniels v. Smith, Mo., 323 S.W.2d 705, 706; Stokes v. Four-States Broadcasters, Mo., 300 S.W.2d 426, 428. And if there is uncertainty arising either from conflict in the testimony or because the undisputed facts may lead reasonable men to draw different conclusions as to whether defendant's servant * * * was acting within the course and scope of his employment, the question becomes not one of law but of fact to be settled by the jury." De Mariano v. St. Louis Public Service Co., Mo., 340 S.W.2d 735, 739.

◼ Respondent Russell reminds us and we bear in mind that the question is whether Simmons was at the time of the accident engaged in the prosecution of his employer's business and not simply whether the accident occurred during the time of his employment. It is, as Russell further points out, well settled that ordinarily an employee going to or returning home from his place of employment is not engaged in the prosecution of his employer's business during either trip. Smith v. Fine, supra, 175 S.W.2d 766[8, 9]. We bear in mind also that it is immaterial that Simmons owned the automobile if it was being used at the time of the accident in the prosecution of his employer's business, Klotsch v. P. F. Collier & Son Corporation, 349 Mo. 40, 159 S.W.2d 589, 592[1], with his employer's express or implied consent, Montana v. Nenert, Mo.App., 226 S.W.2d 394, 399[5].

◼ Respondent Russell insists that under the circumstances shown in evidence Simmons, as a matter of law, was, in effect, on his way to work and, consequently, that the going-and-coming rule applies and thus there is no liability on the employer. We do not agree. It seems to us that the fact that Simmons' *automobile* had not, prior to the accident, completed the trip from the Simmons home to Russell's place of business, does not justify the conclusion that whenever and under whatever circumstances Simmons returned to that automobile and thereafter drove to his employer's place of business, he was "going to work" within the meaning of the so-called going-and-coming rule. The undisputed fact is that Simmons had reached his place of work (he had completed "going to work"), he had reported for work, he had gone on a scheduled call with a General Tire representative, he was returning from that call. We are unable to discern that there would be any difference in Simmons' status at the time of the accident if, instead of an automobile breakdown on the way to work, he had reached work in his own car and had started toward the location of his appointment in that car which had then become inoperable and which was in the process of being repaired preparatory to his continuing toward the scheduled call. Suppose Simmons had traveled to his place of employment by bus and had later picked up his automobile at a garage where he had left it to be repaired; and suppose that thereafter, on his way to call on a prospective tire purchaser, an accident had occurred. Under those circumstances would anyone contend that Simmons was still on his way to work until such time as his *automobile* reached the Russell General Tire Service? We are convinced that Simmons was not in effect on his way to work at the time of the accident in question.

Respondent next insists that the object of Simmons' trip at the time of the accident was purely personal and relies on the case of Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, to support that contention. In the Wines case the employee was a salesman for Goodyear Tire & Rubber Company who was furnished a car which he could use at all times on personal as well as company business. On the night in question the salesman spent the evening in the home of a friend making

a social call. On his way home he stopped at a filling station for gasoline in order to be prepared for a business trip the next day on behalf of his employer. After obtaining the gasoline and departing for his home, an accident occurred. The court there correctly held that the act of obtaining gasoline on the way home from a personal visit for a business trip the next day, if such promoted the employer's business in any degree, was too remotely connected to make the master liable; that obtaining the gasoline was not the inducing factor for the trip to his friend's home but was incidental to the salesman's main purpose in using the vehicle on the night in question.

It must be apparent that the facts in the Wines case are decisively different from the facts in the present case. The evidence here shows without dispute that Simmons and a mechanic, whose services he had engaged to fix his car so it would run again, were "checking out" Simmons' automobile to see whether anything more needed to be done to it to place it in proper operating condition so that Simmons might continue in attempting to make sales for his employer during the remainder of the day. The evidence shows further that following the "checking out" and the accident, Simmons did return to Russell's General Tire Service and did continue to transact his employer's business. Indeed, the Wines case recognizes the principle that if there is substantial evidence that the advancement of the interests of the employer is the primary object of a trip, there is a jury issue as to "scope of employment." (246 S.W.2d 530.) Furthermore, the court in the Wines case distinguished the two cases chiefly relied upon by the salesman in that case and relied upon by the present appellant, Steinmetz v. Saathoff, Mo.App., 84 S.W.2d 437, and Burgess v. Garvin, 219 Mo.App. 162, 272 S.W. 108. The court in Wines said the Steinmetz and Burgess cases were not there controlling, "for the reason that in both of them the *object of the trip* was to condition the automobile

for use in the employer's business. In the first case the employee had taken the car to a garage in a nearby town for needed repairs, which had been made, and the car was on the return trip when the accident occurred. In the latter case the purpose of the trip during which the casualty occurred was to have a tire repaired. In neither of these cases was there any affirmative evidence that the employee was merely on business of his own and that the benefit to the employer was purely incidental. In them the advancement of the interests of the employer was the primary object of the trip." 246 S.W.2d 530.

While Russell contends that neither the Steinmetz nor the Burgess case militates against his position here, he concedes that they were effectively distinguished in the Wines case and, in our judgment, the above-quoted language used to distinguish them shows the applicability of the principle of those cases to the present facts.

We are of the view that it was for the jury to say whether, at the time of the accident, Simmons was engaged primarily in advancing the interests of his employer and thus within the scope of his employment.

Respondent cited two foreign cases, Sedberry, for Use and Benefit of Holloway v. Western Union Telegraph Co., La.App., 9 So.2d 73, and Carroll v. Western Union Telegraph Co., 170 Wash. 600, 17 P.2d 49, to support the statement that "the conditioning of an automobile for business use is not itself a business activity." We have examined the facts in each of those cases and, without prolonging this opinion by a discussion of them, suffice it to say that neither case rules the question here and neither tends to cause us to change our view that under the facts in the present case a jury reasonably could have found that Simmons' primary purpose in the "check out" trip was the advancement of the interests of his employer.

Respondent contends further that there was no substantial evidence that Sim-

mons had the express or implied permission of his employer to use his own automobile and points to the proposition that even though an automobile is being used in the furtherance of the master's business, no liability attaches unless the employer has given the employee express or implied authority to use that automobile on such business. Montana v. Nenert, supra. The trouble with respondent's contention in this respect is that it is based upon the fallacious premise that the evidence in the record supports only the inference that Simmons was to furnish his own transportation with a choice as to kind, when, as we have heretofore pointed out, the record clearly also supports the conclusion that Simmons was to furnish an automobile, that his ability to furnish and use an automobile was a condition of the employment, and that he did furnish and had used for fourteen months his automobile. Under those circumstances, the jury reasonably could have found that Simmons had Russell's express or implied authority to use the automobile he was operating at the time of the accident.

Appellant contends that her $3,-500 verdict was so inadequate as to indicate bias, prejudice, and misconduct on the part of the jury and that improper cross-examination of Mrs. Gardner as to prior and allegedly irrelevant accidents contributed to that inadequacy. In view of our disposition of the case, it would be futile for us to examine those contentions. For, although defendant-respondent Simmons did not file a motion for a new trial and, as we have heretofore noted, has not appealed and has not filed a brief, our holding that appellant made a submissible case against respondent Russell means that the issue of damages must be retried as to both respondents because the final judgment, if appellant should prevail against Russell as she has against Simmons, must be in the same amount against all defendants found liable. Davison v. Farr, Mo.App., 273 S.W.2d 500, 505[12], and cased there cited

It follows: that the judgment against appellant Gardner and in favor of respondent Russell is reversed and the case remanded for retrial on all issues as to Russell; that the judgment in favor of appellant Gardner and against defendant-respondent Simmons is reversed and the case remanded for retrial on the issue of damages only as to Simmons, with the verdict against Simmons on the issue of liability to be held in abeyance pending entry of judgment following such retrial.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.