George T. PYLE and Shirley J. Pyle, Appellees,

v.

UNITED STATES of America, Appellant.

No. 86–2150.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1987.

Decided Aug. 27, 1987.

Rehearing Denied Sept. 22, 1987.

---

F.O. Griffin, Jr., Asst. U.S. Atty., Kansas City, Mo., for appellant.

James P. Frickleton, Kansas City, Mo., for appellees.

Before ROSS,\* Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

The United States appeals the judgment of the district court awarding $250,000 in damages to appellees George T. Pyle and Shirley J. Pyle on their claims brought pursuant to the Federal Tort Claims Act. For the reasons explained below, we reverse.

The Pyles' claims arose from injuries they sustained on December 5, 1981 when a vehicle driven by Patrick Martin crossed the center line of Highway 32 near Bolivar, Missouri and collided nearly head on with the Pyle vehicle. At the time of the accident, Martin was a Petty Officer in the United States Navy. The sole issue before this court is whether the district court erred in determining that Martin was within the scope of his employment with the Navy when the accident occurred.

At the time of the accident, Martin was en route from Naval Training School in Orlando, Florida, where he had been for about seven months, to his permanent duty station in Idaho Falls, Idaho. Martin was traveling pursuant to written orders, which allotted him eight days travel time and an additional number of days annual leave.[1]

Martin had received prior authorization from the Navy to use his own vehicle for transportation. Although he was not directed which route to take, he was paid mileage for the most direct route. Martin was drawing pay during his trip, and also received in advance a per diem for the eight travel days.[2]

At the time of the accident, Martin was subject to orders of commanding personnel at the Idaho Falls station. There was testimony that the Navy could have changed his travel orders at any time. However, unless he was notified of a change of orders, Martin was free to set his own agenda as long as he reported at Idaho Falls on the prescribed date. Martin was not required to call in or check with any Navy personnel during the course of his trip.

Martin, who was not in uniform at the time of the accident, testified that he had been traveling continuously since he left Orlando at 6:00 a.m. on December 4, except for approximately four hours when he pulled over to sleep. The accident occurred at about 7:00 a.m. on December 5. Martin testified that he was planning to spend the night of December 5 at his parents' home in Richmond, Missouri, which is approximately three hours from the scene of the accident.

We must apply the Missouri law of respondeat superior in determining whether Martin was within the scope of his employment at the time of the accident. *Bissell v. McElligott,* 369 F.2d 115, 117 (8th Cir. 1966), *cert. denied,* 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967). This court has previously considered on two occasions the question of whether a serviceman was acting within the scope of his employment under applicable Missouri law. *Compare*

---

\* The Honorable Donald R. Ross assumed senior status on June 13, 1987.

1. The exact number of days leave time which Martin was allotted could not be ascertained by the district court because Martin's travel orders had been lost. Martin testified that he thought he had been given eight days leave time in addition to the eight travel days. Martin was never charged with the leave time, however, because after the accident his orders were changed and he was placed on temporary disability status while he recovered from his injuries.

2. Testimony at trial revealed that for trips by private vehicle, the Navy calculates travel time on a 300 mile per day basis.

*Bissell, supra,* in which we determined that a serviceman was not acting within the scope of his employment, *with Robbins v. United States,* 722 F.2d 387 (8th Cir.1983) in which we reached the opposite result. The determination of whether an employee was acting within the scope of his employment depends on the facts and circumstances of each case. *Burger Chef Systems, Inc. v. Govro,* 407 F.2d 921, 925 (8th Cir. 1969) (citing *Stokes v. Four-States Broadcasters, Inc.,* 300 S.W.2d 426, 428 (Mo. 1957)).

In *Bissell,* Tompkins, an Air Force sergeant, was in an automobile accident as he was returning to his permanent station from temporary schooling. Although not required to do so, Tompkins used his own vehicle for transportation. He was free to choose the route taken, and was paid mileage for the most direct route. Tompkins was required to be back at a specific time, but "[h]e was not required to hurry as leave time above travel time was provided in his orders." 369 F.2d at 118. Just prior to the time of the accident, Tompkins had stopped to visit his wife and his mother-in-law, although he had resumed his trip back to his permanent station when the accident occurred.

In *Bissell* we agreed with the district court's determination that under the applicable Missouri law of respondeat superior "an employer is liable for a negligent act of his servant only if ' "the right of the employer to control the physical acts or movements of the employee *at the very moment of the occurrence* " is established.' " *Id.* at 118 (citing *Riggs v. Higgins,* 341 Mo. 1, 106 S.W.2d 1 (1937) (en banc); *Reiling v. Missouri Ins. Co.,* 236 Mo.App. 164, 153 S.W.2d 79 (1941)). In light of this standard, we determined that Tompkins was not acting within the scope of his employment at the time of the accident. We determined that no benefit accrued to the government by Tompkins' use of his own car for the trip. Further, we found no evidence that the government attempted to reserve any control over Tompkins' use of his automobile. *Id.* at 119.

In *Robbins, supra,* we distinguished the facts in *Bissell* to conclude that an Air Force major was within the scope of his employment when he was involved in an automobile accident. The Air Force major, Loper, was traveling from temporary training at Scott Air Force Base in Illinois to his permanent station at Offutt Air Force Base near Omaha, Nebraska. Loper's orders required him to travel the distance (about 450 miles) in one day. He was authorized, although not required, to use his own vehicle and was paid travel expenses and a per diem. At the time of the accident, Loper was traveling a direct route between Scott Air Force Base and Offutt Air Force Base. He was on active duty and in uniform.

We noted in *Robbins* that the "crucial" difference between that case and *Bissell* was the time allotted each officer for traveling:

> "we think there is a demonstrable difference between the relationship of an army officer traveling from one permanent base to another at government expense, with leave en route, and one without leave whose travel is expressly 'deemed necessary in the military service.' In the former instance, the officer's only duty is to report at a certain place at a certain time; while in the latter, his time belongs to the government and is measured out to him."

722 F.2d at 389 (quoting *United States v. Mraz,* 255 F.2d 115, 117 (10th Cir.1958)). Because Loper was given only one day to travel 450 miles, we determined that the government did in fact reserve the right to control Loper's movements in driving his car.

After reviewing our decisions in *Bissell* and *Robbins,* and in light of the Missouri law of respondeat superior, we find that the district court in this case erred in determining that Martin was acting within the scope of his employment at the time of the accident. We believe that the facts of this case are closely analogous to those in *Bissell.* Like Tompkins in *Bissell,* Martin was not required to use his own vehicle for the trip, although he chose to do so. No benefit accrued to the government by Martin's

choice to use his own vehicle rather than commercial transportation. Further, as in *Bissell*, Martin was free to set his own agenda. Martin was not required to check in or report to Navy officials during the course of his trip, nor did he have to perform any Navy related duties. It is also significant to our decision that Martin, like Tompkins in *Bissell*, was not required to hurry, as he had up to eight days leave in addition to his travel time. Unlike Major Loper in *Robbins*, we cannot say that Martin's time was "measured out to him" or "belonged to the government." As a result, we determine that the Navy had no reservation of the right to control Martin's acts, such that he was not acting within the scope of employment at the time of the accident.

In making its determination that Martin was acting within the scope of his employment, the district court emphasized that Martin "was subject to military discipline and modifications concerning his travel orders." The district court further noted that Martin would have been required to obey an order of his commander had the commander been along with Martin on his travel. However, Martin testified that under the Navy's command structure, he would have been subject to orders of authorized commanding personnel even while on vacation. However, that alone is not sufficient to place Martin's acts within the scope of his employment. As we noted in *Bissell*, "the unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment." 369 F.2d at 119.[3]

Consequently, because we find that the Navy did not reserve the right to control Martin's acts while he was traveling, we determine that Martin was not acting within the scope of his employment at the time his automobile collided with the Pyle ve-

hicle. Therefore, we reverse the judgment of the district court.

*Govro,* 407 F.2d 921, 926–27 (8th Cir.1969). Our determination that Martin was not acting within the scope of his employment because the Navy failed to reserve the right to control his acts obviates the need to discuss this finding by the district court.

---

3. After finding that Martin was acting within the scope of his employment at the time of the accident, the district court determined that the fact that Martin was traveling to his parents' house did not remove him from the scope of his employment, pursuant to the dual purpose doctrine as set out in *Burger Chef Systems, Inc. v.*