Judith A. STUDEBAKER, Plaintiff–Respondent,

v.

NETTIE'S FLOWER GARDEN, INC., Defendant–Appellant.

No. 61506.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 8, 1992.

---

Lawrence F. Hartstein, St. Louis, for defendant-appellant.

Donald L. Schlapprizzi, St. Louis, for plaintiff-respondent.

CRANDALL, Presiding Judge.

Plaintiff, Judith Studebaker, was injured in an automobile accident when a car driven by James Ferry collided with her vehicle. She brought an action against defendant, Nettie's Flower Garden, Inc. (Nettie's), on a respondeat superior theory on the basis that Ferry was Nettie's employee at the time of the accident. Nettie's appeals from the judgment, entered pursuant to a jury verdict, in favor of plaintiff. We affirm.

The evidence, viewed in the light most favorable to plaintiff, was that Ferry delivered flowers for Nettie's from its main shop on Grand Avenue in the City of St. Louis. Ferry was paid, not by the hour, but at a rate of $2.50 to $3.00 per delivery. If there were no deliveries, he was not paid. He delivered only in an area of St. Louis which Nettie's designated as his territory. Nettie's required him to make two runs each day: one in the morning at 9:30 a.m.; one in the afternoon at 1:30 p.m. When he arrived at the shop, he set up his own route based upon the location of the deliveries in his area. He generally got to work at 8:00 a.m. to prepare for the morning run and at 12:00 p.m. to prepare for the afternoon run. Nettie's also required Ferry to stop by its shop in downtown St. Louis at St. Louis Centre before noon each day to pick up items which needed to be transported to the Grand Avenue shop. After this stop, Ferry proceeded to the Grand Avenue shop for his afternoon run. Nettie's paid Ferry $5.00 for this stop, whether or not there was anything for him to take to the Grand Avenue shop.

Ferry used his own van for the deliveries; Nettie's required that it be heated and air-conditioned to protect the flowers and plants. Although he did not wear a uniform, Nettie's directed that Ferry be neat in appearance and that he conduct himself in a certain manner when on the job. If his behavior or appearance fell below its standards, Nettie's reprimanded Ferry. Ferry paid his own expenses and received no fringe benefits from Nettie's.

On August 9, 1989, the date of the accident in question, Ferry made his morning run and then his mid-day stop at the downtown shop at about 11:00 a.m. There was nothing for him to transport to the Grand Avenue shop. After Ferry left the downtown shop, he stopped at a pawn shop to conduct personal business. He then proceeded to the Grand Avenue shop to prepare for his afternoon run. On the way to the Grand Avenue shop, at approximately 11:45 a.m., Ferry's van collided with plaintiff's automobile.

Plaintiff brought the present action against Nettie's on the basis that Ferry was Nettie's employee and that Nettie's

was liable for his negligence under the doctrine of respondeat superior. The trial court denied Nettie's motion for directed verdict at the close of the evidence. The jury rendered a verdict in favor of plaintiff in the amount of $125,000.00.

On appeal, Nettie's contends that the trial court erred in not directing a verdict in its favor because the evidence did not establish that Ferry was its employee at the time of the accident.

Under the doctrine of respondeat superior an employer is liable for those negligent acts or omissions of his employee which are committed within the scope of his employment. *Light v. Lang*, 539 S.W.2d 795, 799 (Mo.App.1976). Liability based on respondeat superior requires some evidence that a master-servant relationship existed between the parties. *Usrey v. Dr. Pepper Bottling Co., Poplar Bluff*, 385 S.W.2d 335, 337 (Mo.App.1964). The test to determine if respondeat superior applies to a tort is whether the person sought to be charged as master had the right or power to control and direct the physical conduct of the other in the performance of the act. *Id.* If there was no right to control there is no liability; for those rendering services but retaining control over their own movements are not servants. *Id.* The master-servant relationship arises when the person charged as master has the right to direct the method by which the master's service is performed. *Id.* An additional inquiry is whether the person sought to be charged as the servant was engaged in the prosecution of his master's business and not simply whether the accident occurred during the time of employment. *Gardner v. Simmons*, 370 S.W.2d 359, 364 (Mo.1963). Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and his right of control. *Sharp v. W. & W. Trucking Co.*, 421 S.W.2d 213, 220 (Mo. banc 1967).

Nettie's first asserts that, when the accident in question occurred, Ferry was not driving his vehicle to serve Nettie's business interests. It argues that Ferry was on his own time, conducting his own business.

Nettie's relies on *Sharp*, 421 S.W.2d at 213, to support its position that it is not liable for Ferry's negligence. In *Sharp*, the truck driver was an employee of a trucking company which hauled building and paving materials. *Id.* at 215. He was not paid a salary and his earnings depended on the hauling actually done. *Id.* at 220. There were no guarantees that, even if he reported to work, there would be anything for him to haul. *Id.* When the accident occurred, he was on his way to another company which had an arrangement with the employer-trucking company to do its hauling. *Id.* The court did not hold the trucking company liable for the negligence of the driver because there was no special benefit to the trucking company from the trip other than the general benefit of the driver making his services available for work. *Id.* The court stated:

> It is generally held that getting to the place of work is ordinarily a personal problem of the employee and not a part of his services to his employer, so that in the absence of some special benefit to the employer other than the mere making of the services available at the place where they are needed, the employee is not acting within the scope of his employment in traveling to work, even though he uses his employer's motor vehicle, and therefore the employer cannot be held liable under the doctrine of respondeat superior to one injured by the employee's negligent operation of the vehicle on such a trip.

*Id.* at 219 (quoting 8 Am.Jur.2d, Automobiles and Highway Traffic, § 630, p. 184).

In *Wines v. Goodyear Tire and Rubber Co.*, 246 S.W.2d 525, 530 (Mo.App.1952), a tire salesman stopped at a filling station on the way home from spending the evening at a friend's house. He refueled the car, which was owned by his employer, in preparation for a business trip the next day. *Id.* After obtaining the gasoline, he started for home and was involved in an acci-

dent. *Id.* The court held that, despite the salesman's intention to gas up the car for a subsequent business trip, the act of obtaining the gasoline was too remotely connected to promoting the employer's business to justify holding the employer liable for the salesman's negligence. *Id.* The court found that procuring the gasoline was not the inducing factor in making the trip, but was incidental to the salesman's personal pleasure trip. *Id.* The court held that the advancement of the interests of the employer was not the primary object of the salesman's trip to the gasoline station, but was merely incidental to the personal trip. *Id.*

In *Gardner*, 370 S.W.2d at 361, a car, which was owned by a salesman but required for his employment, broke down on the way to a business appointment. The salesman left it on the shoulder of the road and proceeded to make his scheduled call. *Id.* After completing the call, he returned to his vehicle with a mechanic. *Id.* The salesman then drove the car, with the mechanic in it, for the purpose of "checking out" the vehicle. *Id.* At that point, an accident occurred. *Id.* at 362. The court focused on the salesman's having gone on a scheduled business appointment prior to picking up his car and concluded that the salesman was not on his way to work at the time of the accident. *Id.* at 364. The court found that the salesman, at the time of the accident, was primarily engaged in advancing the interests of the employer and was within the scope of his employment. *Id.* at 365. Under those circumstances, the court found evidence that the tire company was liable for the salesman's negligence under the doctrine of respondeat superior. *Id.*

■■■ The facts of this case are distinguishable from those of *Sharp*. In contrast to the driver in *Sharp*, Ferry was not just traveling to work to make his services available to Nettie's. Although he was returning to the Grand Avenue shop to plan his afternoon run when the accident occurred, Ferry had just completed his morning run and the requisite mid-day stop at the downtown shop. Because he was re-

turning from the mid-day stop, there was a special benefit to Nettie's in that he was engaged in furthering Nettie's business interests.

Like the driver in *Gardner*, Ferry had already started his work day at the time of the accident. Ferry was on the return segment of his mid-day trip to Nettie's downtown shop, which Nettie's required him to make on a daily basis and for which he was paid, whether or not there was anything for him to transport. Nettie's derived a special benefit from Ferry's mid-day trip in that it was assured that items could get from its downtown shop to its Grand Avenue shop. The fact that he picked up nothing from the downtown shop to transport to the Grand Avenue shop is immaterial. To hinge the determination of whether Ferry was furthering Nettie's business interests on the presence or absence of an item from the downtown shop eviscerates the business interests test.

This case is also distinguishable from *Wines*. Ferry's slight detour prior to the accident to conduct personal business did not mean that he was using his van exclusively for his independent purposes. Unlike the driver in *Wines*, the object of Ferry's trip was not just to go to the pawn shop. At the time of the accident, Ferry was doing Nettie's business because he was returning to the Grand Avenue shop after making his routine mid-day stop at the downtown shop. This stop was so encompassed within his daily routine that it would be difficult to segregate it from his morning and afternoon runs.

There was sufficient evidence for the jury to determine that at the time of the accident, Ferry was engaged primarily in advancing the business interests of Nettie's and thus was acting within the scope of his employment. Nettie's first point is denied.

Nettie's further contends that there was no substantial evidence that Nettie's controlled or had the right to control Ferry at the time of the collision. Whether or not the right of control existed in a particular case is ordinarily a question of fact for the jury. *Gardner*, 370 S.W.2d at 361.

In the instant action, Ferry furnished his own means of transportation; but it was mandatory that he have a vehicle to carry out his job responsibilities. Nettie's required that his vehicle be equipped with heating and air-conditioning systems. Nettie's also set standards for Ferry's dress and conduct while he was on the job, and monitored his compliance with these standards. In addition, although Ferry mapped out his own route to deliver the flowers, Nettie's gave him the list of customers and determined his territory. Nettie's directed Ferry to make the mid-day stop at its downtown shop on a daily basis and paid him for that stop. Ferry incorporated that stop into his route. The stop usually occurred after his morning run and prior to his return trip to the Grand Avenue shop for his afternoon run. In addition, Nettie's always paid him for this stop, whether or not he transported anything. There was substantial evidence from which a jury reasonably could have found that, at the time of the accident in question, Nettie's either controlled or had the right to control the manner in which Ferry performed the duties for which he was employed. Nettie's second point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI and GRIMM, JJ., concur.