Geraldine L. LOGAN, Appellant,

v.

HYATT LEGAL PLANS,
INC., Respondent.

No. WD 47948.

Missouri Court of Appeals,
Western District.

April 26, 1994.

Mitchell B. Martin, Loughlin Johnson Campbell & Martin, Kansas City, for appellant.

David E. Larson, Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

## PER CURIAM:

Geraldine Logan appeals from the trial court's order dismissing with prejudice her first amended petition for damages against Hyatt Legal Plans, Inc., a Delaware corporation. Her petition asserted that Hyatt Legal Plans, Inc. is liable for the tortious conduct of Dori Dolinar, a secretary and legal assistant who worked in the "Hyatt Legal Services" office during the time that an attorney in that office represented Logan in an action for dissolution of marriage. The trial court, concluding there could be no basis of vicarious liability against Hyatt Legal Plans, Inc., dismissed the action with prejudice. We now reverse and remand.

Prior to and during the time of her dissolution proceeding in October 1991, Logan was employed by American Telephone & Telegraph Company (AT & T). One of the benefits offered to eligible non-management AT &

T employees was a group legal services plan which provided pre-paid personal legal services. The benefits under this plan were administered by "Hyatt Legal Plans, Inc.," (hereafter "Hyatt") a corporation whose headquarters is located in Cleveland, Ohio. As an eligible employee, Logan received a summary plan booklet describing the benefits provided under the plan including the types of services covered and applicable restrictions. Under the plan, employees seeking legal services would be referred by Hyatt to designated "participating law firms" or "plan attorneys" who were employed by those firms.

In order to obtain information about the services provided under the plan, the summary booklet instructed employees to contact the client service center by calling a "1–800" number. A client service representative would verify the employee's eligibility, answer any questions about the plan and could also refer employees to plan attorneys located in the area. Logan claims that she was referred to Jay Crotchett of "Hyatt Legal Services" in Kansas City after calling the 800 number listed in the plan. Crotchett was employed in the law office operating under the name "Hyatt Legal Services." Logan apparently assumed that Crotchett was employed by Hyatt.

On May 16, 1991, Logan retained Crotchett as her attorney to represent her in a dissolution proceeding. Although she and her husband, John Gragg, were separated, they both attended the initial meeting at the Hyatt Legal Services office. At that meeting, Logan and Gragg met Dori Dolinar, a secretary and legal assistant employed by the law firm. Shortly thereafter, Dolinar allegedly began a sexual relationship with Gragg which continued throughout the dissolution proceedings. There is no allegation in the petition that either Jay Crotchett or Allen Lebovitz were aware of Dolinar's involvement with Gragg during Crotchett's representation of Logan. Logan alleges that during the time she was being represented by Crotchett, Dolinar secretly disclosed to Gragg various confidential communications between Logan and her attorney as to her negotiating posture, and that Dolinar coun-

seled and encouraged Gragg to refuse to pay certain portions of the marital debt, to renege on previous commitments, to threaten bankruptcy, and to refuse any offers of reconciliation with his wife.[1]

Following the dissolution of her marriage, Logan learned of Dolinar's involvement with Gragg and brought suit against Hyatt alleging that the corporation was vicariously liable for the tortious conduct of Dolinar. Hyatt filed a motion to dismiss, contending that Hyatt could have no liability because "Hyatt Legal Services" was a separate entity from Hyatt and that neither Dolinar nor Crotchett were agents or employees of Hyatt. The motion to dismiss was sustained by the court and Logan was granted thirty days to file an amended petition.

■ A two-count amended petition was filed on December 7, 1992. Count I realleged that Hyatt was liable for the tortious acts of Dolinar. Count two was a claim for breach of contract, alleging that Dolinar was "acting in the employment and subject to the control" of Hyatt and that Hyatt breached its duty to plaintiff through Dolinar's activities. Logan contends that Dolinar's misconduct effected a breach of Hyatt's "contractual assurances of ethical and confidential representation." Hyatt filed another motion to dismiss and included an affidavit signed by Andrew Kohn, General Counsel of Hyatt, denying that Crotchett and Dolinar were agents, employees or servants of Hyatt. The affidavit alleged that both worked for Allen Lebovitz, the sole proprietor of the law firm doing business as "Hyatt Legal Services."[2] The affidavit further stated that "Hyatt Legal Plans, Inc., had no actual control or right to control the activities of Crotchett or Dolinar." After reviewing the amended petition and considering the suggestions in support and in opposition to the motion to dismiss, the court entered an order dismissing the

action with prejudice. Logan appeals from that order.

Pursuant to Supreme Court Rule 55.27(a), "when matters outside the pleadings are presented to and not excluded by the court, a motion to dismiss is to be treated as one for summary judgment." *Black Leaf Products Co. v. Chemsico, Inc.,* 678 S.W.2d 827, 829 (1984). In such case, all parties should "be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04." Rule 55.27(a). In this case, by designating the dismissal "with prejudice" and by considering factual matters outside the pleadings, the court, in effect, entered summary judgment against plaintiff.

■ When considering appeals from summary judgments, the court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Here, it must be shown that there is no genuine issue as to any material fact, and that plaintiff is entitled to judgment as a matter of law. Rule 74.04.

■ A motion to dismiss can be treated as a motion for summary judgment, pursuant to Rule 55.27(a), and matters outside the pleadings considered, when the parties are first notified by the court that it is treating the motion as one for summary judgment, and allows the parties to present all material pertinent to a motion for summary judgment. *Luethans v. Washington University,* 838 S.W.2d 117, 120–21 (Mo.App.1992). The record in this case does not show that notice was given to the parties that the motion would be treated as one for summary judgment. Therefore, we must examine the record with an eye to determining whether the summary judgment ruling might have cut

---

1.. Logan alleges Dolinar was guilty of various acts of a tortious nature. Some of the alleged tortious conduct is no longer cognizable in Missouri. *See Thomas v. Siddiqui,* 869 S.W.2d 740 (Mo. banc 1994) (where the Missouri Supreme Court abolished the tort of criminal conversation). Stripped to its basics, the claim would · seem to be essentially a claim of legal malpractice based upon Dolinar's conduct, which was disloyal to Logan.

2. The use of a trade name in professional practice may be prohibited if such use is misleading. *See* Supreme Court Rule 4, Rules of Prof.Conduct, Rule 7.5 which purports to prohibit the use of trade names, and the Comment thereto. Plaintiff has not in this case alleged any impropriety in the use of the Hyatt trade name.

short plaintiff's opportunity to develop through discovery any material facts which would support plaintiff's theories of recovery.

An employer may be held liable for the negligent acts or omissions of his employee under the doctrine of respondeat superior if those acts are committed within the scope of employment. *Studebaker v. Nettie's Flower Garden, Inc.*, 842 S.W.2d 227, 229 (Mo. App.1992). In this case, all of the alleged misconduct of which Logan complains is attributed to Dolinar. The affidavit of Andrew Kohn, General Counsel of Hyatt, asserts that at the time of the alleged misconduct, Dolinar was employed by Allen Lebovitz, a sole proprietor of a law firm using the trade name "Hyatt Legal Services." The affidavit states that Dolinar was not and had never been an employee or agent of Hyatt and offers the conclusion that Hyatt had no actual control or right to control the activities of Ms. Dolinar. The "bare bones" affidavit does not attempt to explain the relationship between Hyatt and Lebovitz's office. Logan, of course, having not had an opportunity to engage in discovery, has not had the opportunity to develop evidence which would show some sort of relationship between Hyatt and Lebovitz upon which vicarious liability could be predicated. Even assuming the truth of the affidavit, as far as it goes, it cannot be said that the affidavit is necessarily the last word on Hyatt's potential liability, particularly in view of plaintiff's attempt to plead estoppel as to the relationship between Hyatt and Dolinar. Logan also contends that the summary plan booklet contradicts Kohn by its description of the operation of the benefit plan. Plaintiff asserts that the summary plan booklet raises enough questions that she should be entitled to engage in some discovery in order to determine the nature of the relationship between Hyatt and Lebovitz.

On this appeal, Plaintiff argues that, based on the content of the summary plan booklet, defendant is estopped from denying liability for Dolinar's conduct. Plaintiff essentially argues that the content of the summary plan booklet created an impression, upon which plaintiff reasonably relied, that the legal services would be provided by an employee of Hyatt Legal Plans. Although this theory was not specifically pleaded in the trial court, plaintiff indicated in correspondence to the trial court that she wished to file a third count setting forth the theory that plaintiff was fraudulently induced to bring her legal business to Lebovitz, innocently believing that she was bringing it to Hyatt Legal Plans, Inc. Giving plaintiff the benefit of the doubt, this count could be construed as an attempt to assert that Hyatt is estopped, for purposes of this litigation, from denying that Dolinar was Hyatt's agent or employee. At this early stage of the case, we will give plaintiff's pleadings (and proposed pleadings) the broadest possible intendment for purposes of our review, in view of the finality of a disposition by summary judgment.

A provision in the plan booklet states that "Hyatt Legal Plans or the law firms providing services under the plan are responsible for all services provided by their attorneys." This provision could be interpreted as a statement that Hyatt *is at least contingently responsible* for legal services provided under the plan. Also, the plan booklet states that service of process "concerning legal services provided under the plan should be directed to" Hyatt. Another provision of the booklet, which concerns liability with regard to legal services and attorney conduct, states: "[y]ou should understand that AT & T, the unions, the Plan and their directors, officers, and employees have no liability for the conduct of any plan attorney or the services provided." This sentence does *not* say that *Hyatt Legal Plans, Inc.* has no liability in connection with such services, and the term "the Plan" is not synonymous with Hyatt Legal Plans, Inc., in the definitions set forth in the booklet.[3] Since the summary plan booklet is not entirely supportive of the idea that Hyatt has no relationship to Dolinar upon which liability could be imputed, there remained some reasonable question as to the nature of the

3. The "Plan" is defined as "the AT & T Non-Management Group Legal Services Plan which is described in this booklet...." "Hyatt Legal Plans, Inc." is defined as "Hyatt Legal Plans or such other persons or entities selected by AT & T to provide covered services as set forth in the Plan."

relationship between Hyatt Legal Plans, Inc. and "Hyatt Legal Services."

Plaintiff's intention to plead a theory of vicarious liability was cut short by the action of the court in dismissing the case without prior notice to plaintiff that the court was considering, in effect, a summary judgment ruling. To the extent that the trial court based its ruling on the notion that there could be no vicarious liability reaching from "Hyatt Legal Services" to Hyatt, the trial court acted prematurely. It could be argued, however, that the judgment must be sustained in any event because, regardless of the issue of Hyatt's agency, plaintiff will be unable to show that Dolinar's disloyal and improper actions were conducted in the course and scope of her employment. Review of summary judgment is the same as review of a court-tried case and the judgment will be sustained if, as a matter of law, it is sustainable on any theory. *Gen. Am. Life Ins. Co. v. Barrett,* 847 S.W.2d 125, 129 (Mo.App.1993). It is difficult to imagine how plaintiff intends to show that Dolinar's actions were within the scope of her employment or agency when there is no apparent reason to believe that Dolinar's actions were undertaken in the interest of her employer, or were encouraged or tolerated by her employer. Crotchett, who was engaged in representing Logan, ordinarily would have no reason to countenance Dolinar's involvement with Gragg, which was disloyal to Logan and could have interfered with Crotchett's ability to secure a favorable result for Logan. However, we cannot say that it is impossible to imagine a set of facts in which Crotchett or Lebovitz could hypothetically have involved themselves in the matter to such a degree that vicarious liability is appropriate. At this stage of the matter, plaintiff could not be expected to know whether she could make such a showing or not. While plaintiff has not alleged wrongdoing on the part of Crotchett or Lebovitz, such forbearance may well be due to a desire to exercise restraint in pleading in the early stages of a case. In reviewing plaintiff's pleadings, it should be kept in mind that plaintiff did not necessarily anticipate that defendant's motion would result in an adjudication on the merits, since the trial court did not give plaintiff notice it would consider granting summary judgment. Plaintiff has had no opportunity for discovery. Since we do not have the benefit of briefing by the parties on this issue, and there has been no opportunity for discovery, we are reluctant to hold that, as a matter of law, there could be no vicarious liability for Dolinar's actions. Plaintiff should be given an opportunity to explore the possibility of any malfeasance by Crotchett or Lebovitz, and to explore the relationship between Hyatt and the office of "Hyatt Legal Services." Consequently, we reverse and remand the case. We conclude that there remain some genuine issues of material fact.

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.[4]

---

4. No issue has been raised herein concerning the applicability of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* *Sua sponte* raising the issue of our jurisdiction over these claims, we conclude that we do have jurisdiction. Count I attempts to assert a cause of action in tort. Count II sets forth a claim of Logan to "enforce [her] rights under the terms of the [employee benefit] plan ..." in accordance with 29 U.S.C. § 1132(e)(1). This court's jurisdiction over Count II is thus concurrent with that of the United States district courts. *See In re Estate of Carroll,* 857 S.W.2d 848 (Mo.App.1993) (appendix).