129 F.3d 119
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lydia SHIFFLETT, Plaintiff-Appellant,
v.
UNITED STATES of America, d/b/a United States Navy,
Defendant-Appellee.
 No. 97-1864.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1997.
Decided Oct. 23, 1997.
 
 1
 Appeal from the United States District Court for the Southern District of Illinois.
 
 
 2
 Before Hon. ESCHBACH, EASTERBROOK and WOOD, Circuit Judges
 
 ORDER
 
 3
 Plaintiff Lydia Shifflett was injured in an automobile accident near St. Louis, Missouri. She alleged that Lt. Benjamin Palmer, a Marine Corps Reserve officer driving his personal vehicle to his duty station in Virginia for training, negligently operated his car and caused her injury. Ms. Shifflett sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b) 2671-80. The district court granted summary judgment in favor of the government after concluding that Lt. Palmer was not acting within the scope of his employment at the time of the accident. On appeal, Shifflett argues that because Lt. Palmer was on active duty at the time of the accident, the United States is liable under a theory of respondeat superior. We affirm.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 4
 On July 31, 1990, Marine Corps Headquarters issued Benjamin Palmer's orders: "You are assigned to active duty on such date as will enable you to report not earlier than 0800 and not later than 2400 on 27 SEP 90 to ... Combat Development Command" in Quantico, Virginia. Palmer's orders thus allotted him at least twenty-nine days to reach his duty station. The orders continued: "Travel via privately owned vehicle is authorized. You may travel via commercial transportation and submit a claim for reimbursement. Proceed time is not authorized." Palmer was instructed to submit material "to the disbursing officer ... to settle travel expenses" following his arrival.
 
 
 5
 On September 15, 1990 Palmer was commissioned as a Second Lieutenant in the Marine Corps Reserve and left California, his home of record, for Virginia "on or about September 19, 1990." While traveling in his privately-owned vehicle on Interstate 270 near St. Louis on September 23, Palmer was involved in a traffic accident with Shifflett. Shifflett sued the United States through the FTCA, but the government moved for summary judgment, denying that Lt. Palmer was acting within the scope of his employment at the time of the accident. In support of its motion, the government submitted Lt. Palmer's active duty orders.
 
 
 6
 On May 13, 1997, the district court granted the government's motion, noting both the interval allotted Lt. Palmer to reach his duty station and the lack of authorized proceed time. The court concluded that Lt. Palmer "was not under the control of the Navy at the time of the accident."
 
 
 7
 Shifflett challenges the grant of summary judgment. Our review is de novo: the record and all inferences drawn therefrom will be viewed in the light most favorable to her See Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir.1996). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The non-movant may not rely upon mere allegations, but must present specific facts to show that a genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 II. DISCUSSION
 
 8
 Under the FTCA, the government is liable for the negligent conduct of an employee "while acting within the scope of his office or employment" under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "Acting within the scope of his office or employment," with respect to military personnel, means "acting in line of duty." 28 U.S.C. § 2671. "Line of duty," in turn, invokes the applicable state law of respondeat superior. Walsh v. United States, 31 F.3d 696, 698 (8th Cir.1994); Duffy v. United States, 966 F.2d 307, 314 (7th Cir.1992). The phrase does not expand the scope of the doctrine of respondeat superior beyond the state law rules for holding a private employer liable. See Bissell v. McElligott, 369 F.2d 115, 118 (8th Cir.1966). In this case, the situs of the accident is Missouri and thus, its law is controlling.
 
 
 9
 A Missouri employer is liable for the negligent acts or omissions of her employee committed within the scope of employment, see Studebaker v. Nettie's Flower Garden, Inc., 842 S.W.2d 227, 229-30 (Mo.App.1992), but the "mere existence" of an employer-employee relationship is not, without more, sufficient to impose liability on the employer. Sharp v. W. & W. Trucking Co., 421 S.W.2d 213, 219 (Mo.1967) (citation omitted). The plaintiff must establish the master's "right or power to control and direct the physical conduct of the other in the performance of the act" giving rise to the harm. Studebaker, 842 S.W.2d at 229. An additional inquiry is necessary to determine whether the employee was "engaged in the prosecution" of the employer's business at the time of the occurrence, or whether the accident simply occurred during the time of employment. Id.
 
 
 10
 Three panels of the Court of Appeals for the Eighth Circuit have applied the Missouri law of respondeat superior to resolve FTCA claims involving military personnel. See Pyle v. United States, 827 F.2d 360, 361-63 (8th Cir.1987); Robbins v. United States, 722 F.2d 387, 388-89 (8th Cir.1983); Bissell, 369 F.2d at 118-19. The test articulated by the Court of Appeals for the Eighth Circuit requires the plaintiff to establish "the right of the employer to control the physical acts or movements of the employee at the very moment of the occurrence" for which the employer is sought to be held responsible. Pyle, 827 F.2d at 362; see Robbins, 722 F.2d at 388; Bissell, 369 F.2d at 118.
 
 
 11
 Shifflett contends that Lt. Palmer's situation is analogous to that of the officer in Robbins v. United States, whom the court found to be acting within the scope of his employment at the time of the accident. 722 F.2d at 389. In concluding that the government had exercised or reserved "the right to control [the officer's] physical acts or movements in driving his car," the Robbins court explained that the "crucial" factor in its analysis was the government's allocation of a single day for the officer to make a trip of "over 450 miles" between duty stations. Id. at 388-89; see also Pyle, 827 F.2d at 362-63 (discussing Robbins ). The court concluded on this basis that the government had "impliedly instructed him to take the most direct route." Robbins, 722 F.2d at 389.
 
 
 12
 Here, the record indicates no such restriction on Lt. Palmer's travel. The Marine Corps issued Lt. Palmer's orders at least twenty-nine days prior to the date he was instructed to report in Virginia, a distance Shifflett has estimated as 2700 miles from Lt. Palmer's home in California. This implies a very different travel regimen than the single day allotted the Robbins officer for his 450 mile journey. The government gave Lt. Palmer no guidance as to what route to take, nor has Shifflett ever suggested that Lt. Palmer's presence in Missouri occurred by directive of the military. There is likewise no indication that Lt. Palmer was required to perform any duties or check with his commanding officers while en route.
 
 
 13
 It is true, as Shifflett argues, that a military employee on active duty is subject to all military rules and regulations whether or not he is driving a private vehicle. She also points out that the government could have required that Lt. Palmer travel by a particular route, limited his mode of travel or otherwise modified his orders at any time. Indeed, some courts of appeal have considered this unqualified right of power in their scope of employment analyses. See e.g., United States v. Culp, 346 F.2d 35, 36 (5th Cir.1965) (applying Texas law); Hallberg v. Hilburn, 434 F.2d 90, 92-93 (5th Cir.1970) (same); Hinson v. United States, 257 F.2d 178, 181-82 (5th Cir.1958) (applying Georgia law). Shifflett's argument, however, exposes the government to liability for the conduct of its personnel far beyond those circumstances where "a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As the Court of Appeals for the Ninth Circuit pointed out, "a private employer does not have the military's right to exercise complete authority over its employees at all times." Hartzell v. United States, 786 F.2d at 964, 968-69 (9th Cir.1986). The Court of Appeals for the Eighth Circuit has similarly observed, "[T]he unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment." Pyle, 827 F.2d at 363 (internal quotation and citation omitted); see also Walsh, 31 F.3d at 700 (applying Iowa law). The Eighth Circuit has rejected the proposition that simply because a military officer is subject at all times to military command, the Uniform Code of Military Justice, or modification of travel or duty orders, his conduct necessarily falls within the scope of his employment. See Pyle, 827 F.2d at 363; Bissell, 369 F.2d at 119.
 
 
 14
 Finally, Shifflett suggests that the government might have derived some economic benefit from Lt. Palmer's trip, such as a reduction in paper work relative to reimbursement for commercial travel, or a cost savings compared to commercial travel and the shipment of his vehicle. See Ashworth v. United States, 772 F.Supp. 1268, 1273 (S.D.Fla.1991) ("The regulations affecting these changes of duty station and the accompanying monetary allowances reveal that an economic determination has been made that non-transoceanic moves by private conveyance are advantageous to the government."). She also suggests that the government's business is served, at least in part, by personnel transfers between duty stations, and that, because these transfers are an integral part of the duties Lt. Palmer performs for the government, his travel falls within the scope of his employment.
 
 
 15
 This is an allusion to the "going and coming" rule and the special benefit exception. Getting to the workplace is generally not a part of the services a Missouri employee renders to his employer. S Sharp, 421 S.W.2d at 219. Absent some "special benefit to the employer other than the mere making of the services available at the place where they are needed, the employee is not acting within the scope of his employment in traveling to work." Id. (internal quotation and citation omitted); see also Logan v. Phillips, 891 S.W.2d 542, 544 (Mo.App.1995).
 
 
 16
 Two Missouri cases demonstrate the workings of the rule. In Studebaker v. Nettie's Flower Garden, Inc., a Missouri appellate court held a florist liable for the conduct of a delivery person returning to the shop from a personal errand. 842 S.W.2d at 228. The court pointed out that the driver was required to have his own car, specially equipped, and had shaped his day around the florist's business needs: this was the "special benefit" the florist derived from the arrangement. Id. at 230-31. Conversely, a Missouri appellate court declined to hold a city government liable for an accident involving a police officer traveling under subpoena to testify at trial. See Logan, 891 S.W.2d at 544. The Logan plaintiffs had argued, inter alia, that the officer's travel under subpoena raised a triable issue of fact concerning the scope of his employment. Id. at 544-45. The appellate court rejected the argument; it its view, the subpoena was merely a "command to report at a time certain." Id. at 545. A Missouri court, or a federal court interpreting Missouri law, would thus regard Lt. Palmer's orders to report in much the same manner as the Logan appellate court treated the police officer's subpoena.
 
 
 17
 There is no indication here that Lt. Palmer was required to perform any duties while en route to Virginia, nor has Shifflett made any such suggestion. His orders do not indicate any direction by the government concerning the manner, mode or route of his travel. He was authorized, but not instructed, to proceed by privately-owned vehicle, though he could just as well have traveled commercially: the choice was his. The orders suggest no interest on the government's part in Lt. Palmer's travel other than. assuring that his services were available at his duty station some time between 8:00 A.M. and 12:00 P.M. on September 27, 1990. Moreover, neither the Pyle nor the Bissell courts, under circumstances very similar to Lt. Palmer's, found a benefit sufficiently special under Missouri law to warrant shifting liability to the government based on the use of a private vehicle. See Pyle, 827 F.2d at 362-63; Bissell, 369 F.2d at 119. The special economic benefit suggested by Shifflett is too remote to be availing here.
 
 
 18
 Because there is no indication that the government has actually reserved or exercised its right to control Lt. Palmer at the moment of the act giving rise to the claim, we conclude that Lt. Palmer was not acting within the scope of his employment at the time of his accident.
 
 
 19
 AFFIRMED.